| 65 | 399 |
| --- | --- |
| 141 | 296 |
| 65 | 399 |
| 160 | 114 |
| 65 | 399 |
| 183 | 544 |
| 65 | 399 |
| 208 | ᴮ 95 |

# The Chicago & Northwestern Railway Co.

## v.

## Gardner A. Ingersoll *et al.*

1. CONTINUANCE—*want of diligence.* Where suit was brought Dec. 22, 1871, and an application for a continuance was made in June, 1872, on the ground of the absence of a witness, formerly a resident of this State, but then of Baltimore, which the court below refused: *Held*, no error, as the affidavit for continuance was palpably deficient as to showing diligence.

2. EVIDENCE—*opinion of witness.* Where a witness in a suit against a railroad company for failing to deliver a shipment of grain in proper time, disclaimed all personal knowledge of the time grain was shipped, and did not pretend to possess any peculiar knowledge as to the management of the defendants' road, or the running of the trains: *Held*, that it was not proper to permit the witness to give his opinion whether it would have been possible or probable, in the ordinary course of business, for the grain to have been placed under the control of the consignee by a given day.

3. SAME—*proof of loss, to admit secondary evidence.* Where grain was shipped under a written contract, it was shown that the station agent delivered the same to a messenger to deliver to the general freight agent at Chicago, who was the proper custodian of it, and that his office where he kept such papers was burned, with its contents: *Held,* that this was not a sufficient foundation for the admission of secondary evidence of the contents of the written agreement. The general agent should have been called to show that he received it and placed it in his office, and that it was there when the office was burned.

4. SAME—*entry upon books of third party.* Where a railroad company was sued for the non-delivery of grain to the consignee of the plaintiff, and the company defended upon the ground that they delivered the same to a third party with whom the consignee had grain shipped to him, delivered, and that the same was burned in the great Chicago fire, the defendant offered in evidence an entry made in a book of such third party on Oct. 7, 1871, shown to have been made in the usual course of business, by the foreman of the receiving and weighing department of such third party, as tending to show the receipt of the plaintiff's grain on that day. It was not pretended that the foreman was dead, but the offer was based upon showing the entry to have been in his handwriting, and made in the course of his ordinary duties and as a part of the *res gestæ: Held,* that the entry was proper evidence, and should have been admitted.

APPEAL from the County Court of De Kalb county; the Hon. LUTHER LOWELL, Judge, presiding.

The defendant in this case filed an affidavit for a continuance on the ground of the absence of a material witness. Upon the question of diligence the affidavit showed that shortly after the suit was brought the affiant put the defendant in possession of a knowledge of the plaintiff's claim so far as the same was known; that affiant believed defendant immediately set to work, through its officers, to trace the cars containing the grain in controversy, and that defendant has since been using ordinary and proper means to obtain knowledge of the facts relating to plaintiff's claim; and upon such inquiry defendant, for the first time, on the last Saturday preceding, learned that James Clark was the person who weighed such grain, and that he was in Baltimore; that since learning such fact, sufficient time has not elapsed to obtain his testimony. The following were the interrogatories, and answers

of the witness Eaton, the consignee referred to in the opinion of the court:

"11.   If a car load of grain in the bulk had been shipped to you from Malta, in the forenoon of the seventh of October last, over the road of defendants, when, or about when, according to the usual course of business, would it have been placed under your control at Chicago as consignee? Ans. On the forenoon of Monday or Tuesday following.

"12.   If it had been shipped from Malta on the night of the 6th of October last, or very early in the morning of the 7th, when would it have been placed under your control as consignee, in the ordinary course of business? Ans. We should have expected it on Monday morning.

"13.   In either of the cases supposed in the last two interrogatories, would it have been possible or probable, in the ordinary course of business, for the grain to have been placed under the control of the consignees on Saturday? Ans. It would not."

The other facts are stated in the opinion of the court.

Mr. B. C. Cook, for the appellant.

Messrs. Divine & Pratt, for the appellees.

Mr. Justice McAllister delivered the opinion of the Court:

This was an action on the case, in the county court of De Kalb county, by appellees against appellant as common carrier, for breach of duty in not delivering a quantity of wheat and barley shipped by the former, in cars of the latter, at Malta in said county, to be safely and securely carried to Chicago, and delivered to H. S. Eaton, consignee.

The grain was shipped in bulk—the wheat on the sixth and the barley on the seventh of October, 1871. As to the barley, the defense was sought to be made that it was in part

brought to Chicago on the seventh, being Saturday, and on that day delivered by appellant into the elevator of Munger, Wheeler & Co., who were authorized by the consignee to receive it, and was destroyed by the great fire in Chicago, October 8th and 9th, 1871.

The first point made is, the denial of the motion for continuance made before the trial at the June term, 1872. The suit was commenced December 22d, 1871. The application was in June, 1872, and the ground of continuance was, the absence of one Clark, who formerly resided in Chicago, but *then* in Baltimore, and, as was alleged, was the person who weighed and received the barley into the elevator. We think the affidavits for continuance were palpably wanting in the essential element of showing diligence.

The next point arises upon the admission in evidence of the answers to interrogatories eleven, twelve, and thirteen, put to witness Eaton, the consignee, called on behalf of appellees. The witness disclaimed all personal knowledge as to time when the grain was shipped, and did not pretend to possess any peculiar knowledge as to the management of appellant's road, or the running of the trains. Upon facts hypothetically stated, he was asked to give his opinion whether it would have been possible or probable, in the ordinary course of business, for the grain to have been placed under the control of the consignee on Saturday. The questions were objected to by appellant's counsel, but overruled and the answers admitted. He said it would not.

There was no other purpose in calling for the opinions of this witness, in this manner, than to anticipate and rebut appellant's defense, by showing that inasmuch as it was impossible for the grain to have been put under the control of consignee on Saturday, and the elevator was burned Sunday night or Monday morning, it was therefore impossible that any delivery could have been made which was sufficient to discharge the carrier. The theory of the defense was, not that the grain was placed under the personal control of the

consignee on Saturday, but that it was delivered to the warehousemen whom the consignee had designated to receive it. The questions necessarily call for the mere opinion of the witness. It is a general rule that a witness must speak to facts, and his mere opinion is not evidence. There are well recognized exceptions to the rule, but this case falls within none of them. It is perfectly obvious that the opinion of the witness could only have been drawn from facts hypothetically stated, and others, which the jury were equally as well qualified to pass upon as the witness. The admission of the opinions of the witness was, therefore, error.

The third point arising is that there was error in excluding secondary evidence, offered by appellant, of the contents of a written contract between the parties, under which, as was claimed, the grain in question was shipped. The evidence of loss of original was this: The station agent of appellant obtained it from appellees at Malta; then he delivered into the hands of another person to take it to Chicago and deliver it to the general freight agent, Wheeler, who was the proper custodian of it. He had an office in Chicago, where he usually kept papers, books, and documents belonging to his department, which, with the contents, was burned October 9, 1871. Neither the messenger who took it from the station agent at Malta, nor Wheeler, nor any witness who ever saw it in Wheeler's possession or in his office, was called as a witness. Now from the facts that the station agent at Malta gave it to a messenger to take it to Wheeler, and the burning of his office, the court was called upon to presume that the messenger delivered it to Wheeler, and the latter put it in his office, and that it remained there, and was therefore destroyed with the office. This is not a sufficient foundation for secondary evidence. Wheeler should have been called to show that he received and placed it in his office, and that it was there at the time the office was burned. The court must be satisfied, by sufficient evidence, that the paper is destroyed

or can not be found.   *Mariner* v. *Saunders*, 5 Gilm. 113, and cases there cited.

It appears from the evidence that at the time of these shipments, there was a standing order from Eaton, the consignee, to Munger, Wheeler & Co., directing them to receive in store any grain consigned to him which might be brought to their elevators, put it in bins with other grain of like kind and quality by inspection, subject to their advertised rates of storage and owner's risk of fire and heating.

Eaton had been acting as appellees' factor for some time previous, and was so acting in this transaction.

In the act of receiving grain from the carrier to be put into the elevator, weighing was a necessary part, and in the usual course of the business.

Under these circumstances appellant's counsel offered in evidence an entry, made October 7th, in a book belonging to the business of Munger, Wheeler & Co., shown to have been made in the usual course of business, by Clark, the then foreman of the receiving and weighing department; which entry tends to show, as is claimed, that the car load of barley in question was weighed and received in store at their elevator on that day.   It was not pretended that Clark was dead; the offer was based upon showing it to have been in his handwriting and made in the course of the performance of his ordinary duties, and as part of the *res gestæ*.   Greenleaf, in his Treatise on Evidence, vol. 1, sec. 120, after referring to the admission of such entries, arranges them into two classes. The one class consisting of entries made against the interest of the party making them, and which derive their admissibility from that circumstance alone.   As to these, he says, it is not material *when* they were made.   The testimony of the party who made them would be the best evidence of the fact; but if he is dead, the entry of the fact made by him in the ordinary course of his business, and against his interest. is received as, secondary evidence. in a controversy between third persons.   " The other class of entries consists of those which

constitute parts of a chain or combination of transactions between the parties, the proof of one raising a presumption that another has taken place. Here the value of the entry, as evidence, lies in this, that it was *contemporaneous with the principal part done,* forming a link in the chain of events, and being *part of the res gestœ.* It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily, indeed, but ordinarily and naturally to the principal thing. It is on this ground that this latter class of entries is admitted; and therefore it can make no difference, as to their admissibility, whether the party who made them be living or dead, nor whether he was or was not interested in making them; his interest going only to affect the credibility or weight of the evidence when received." See cases cited in note 2 (Redfield Ed.) in support of the text.

We are of opinion that the entry offered, under the circumstances of this case, falls within the latter class defined by Greenleaf, and was admissible for all it was worth. The weight of a piece of evidence offered forms no criterion of its admissibility. If, in any point of view, it has any tendency to prove a point in issue, and is otherwise competent, it can not be excluded because the tendency is but slight. Many such entries are capable of explanation by applying to them evidence of the usages and customs of the business.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*