# CYRILLE FORTIER v. SKIBO TIMBER COMPANY.[1]

July 22, 1910.

Nos. 16,642—(187).

**Verdict sustained by evidence.**
Evidence *held* sufficient to sustain the verdict of the jury.

**Memorandum book admissible in evidence.**
A memorandum book kept by one making measurements of logs, and verified by him as correct, was properly received in evidence.

Action in the district court for St. Louis county to recover $6,135-.74 amount claimed to be due under a certain logging contract. The complaint alleged that on or about January 10, 1909, plaintiff and defendant entered into a contract whereby plaintiff agreed to sell and deliver on or before April 1, 1909, to defendant on cars at plaintiff's landing logs or timber then owned by him at the agreed price of $14 per thousand feet for green logs or timber, and at the rate of $10.50 per thousand feet for dead or stained logs or timber, in consideration whereof defendant agreed to pay plaintiff one-half of the purchase price of said logs or timber on the first day of April, 1909, and the balance on June 1, 1909; that thereafter and between the date of said contract and the first day of April, 1909, plaintiff pursuant to said contract delivered to defendant 699,280 feet of green pine logs and 99,740 feet of dead and stained logs or timber, and that defendant received and accepted the same in full compliance with said contract; that the price of logs so delivered was $10,738.19, no part of which had been paid except the sum of $4,602.45. In its answer defendant alleged the contract was the scale was to be made by a man deputized by the surveyor general of the state and scaled straight and sound from all incumbrance; that plaintiff delivered 626,570 feet of green pine logs and 74,110 feet

[1]Reported in 127 N. W. 414.

of dead and stained logs; that the logs and timber so delivered and received at the prices aforesaid amounted to the sum of $9,550-.13. Defendant further alleged in his answer that the logs above mentioned were duly and regularly scaled by a deputy surveyor general of the state of Minnesota, according to the terms of the agreement between plaintiff and defendant above set forth, and were of the kinds and amounts above mentioned and no more; admitted that no part of the purchase price had been paid except the sum of $4,602.45, but that on June 4, 1909, he had tendered plaintiff the sum of $4,947.68 which was refused, and alleged that this sum was the full amount due plaintiff. The reply alleged that there was an understanding between plaintiff and defendant that a scale of the logs to be gotten out under said contract might be made by a deputy surveyor general to be agreed on by the parties, but there was no agreement that said scale should be final or conclusive between the parties; that as a matter of fact the man deputized by the surveyor general to make said scale was selected by defendant and had been in its employ and under its influence and control during the greater part of ten years last past; that said deputy never did make a scale of said logs but only of a part thereof, and he acted falsely and fraudulently in making the scale that he did make, and did not return the amount of lumber that was in said logs but only a fraction thereof, and plaintiff has at all times refused to be bound by said scale in any way. The case was tried before Dibell, J., and a jury which returned a verdict in favor of plaintiff for $6,257.49. From an order denying defendant's motion to set aside the verdict and to grant a new trial, defendant appealed. Affirmed.

*Theo. Hollister* and *James A. Hanks,* for appellant.

*John Brennan* and *Fryberger & Fulton,* for respondent.


O'BRIEN, J.

This was an action to recover a claimed balance of the purchase price of logs sold and delivered to defendant under a contract. The logs were shipped by rail to defendant. The only dispute between the parties was the correct measurement or scale of the logs so shipped. The contract for the purchase, which was embodied in

a letter from the defendant, contained this provision: "Scale to be made by a man deputized by the surveyor general, said scale to be straight and sound." Very shortly after the shipments commenced the parties disagreed as to the proper measurements, and this dispute continued to the time of the trial. Plaintiff employed a young man named Morin to measure the logs upon his behalf at the point of shipment, with the exception of six carloads, which plaintiff claimed to have measured personally. Defendant employed a man named Cameron, who was deputized by the surveyor general of logs, and he took measurements of the logs as received, with the exception of six cars, which were scaled by one Hyatt, also deputized by the surveyor general. After the difference as to the proper measurement of the logs became apparent, defendant procured to be made a recheck of the scale made by Cameron and Hyatt. Plaintiff subsequently demanded a remeasurement by two other men. This was refused. When the men selected by plaintiff to make this rescale arrived at defendant's mill, some of the logs had been sawed into lumber, so that at that time a complete remeasurement of the logs could not have been made. Part of the logs shipped were green; but many were old logs, described in the contract as "dead and stained." The evidence shows that portions of such logs are often decayed and worthless. The scaler, therefore, is required to exercise some judgment in determining the number of feet of sound lumber which can be sawed from the logs. Upon the trial the memorandum made by Morin of the measurements, or the scale made by him, was received in evidence over the defendant's objection. This alleged error, and the sufficiency of the evidence to sustain the verdict, which was in plaintiff's favor for the full amount claimed, are the only questions presented upon this appeal.

To the order denying a new trial the learned trial judge attached a memorandum, from which we quote the following: "The dispute is over the scale of certain logs covered by contract between the plaintiff and the defendant. Practically it comes to the question whether the jury were at liberty to take the measurement of Morin in preference to that of Gorman. Perhaps neither was quite satisfactory. Morin had very little experience. Gorman had very

much. When Morin's work was compared with that of certain of the state scalers, there were things to suggest that he was fairly accurate. Other things suggested that he might not be accurate. Gorman's scale was subject to many possible inaccuracies. If I had been trying the case, I would probably not have found the full amount which the jury found. But I can readily see how they might reach their verdict very fairly and very intelligently. The case is an ordinary case of drawing a conclusion from disputed testimony, and the finding of the jury should be upheld."

1. The provision in the contract for the taking of the measurements by a man deputized by the surveyor general of logs did not bind the parties to accept his measurements as final and conclusive. Nelson v. Charles Betcher Lumber Co., 88 Minn. 517, 93 N. W. 661. The correct scale was, therefore, a question for the jury under the evidence, without reference to fraud or bad faith by either party. The jury was instructed: "The scale bills made * * * by the surveyor general's office are prima facie evidence of the correctness of the scale stated in them." This was the most defendant could claim for the measurements made by Cameron and Hyatt, so that the question of fact whether or not the measurements made by Morin and the plaintiff establish the incorrectness of the defendant's claim and the accuracy of plaintiff's claim was directly presented, and, of course, was for the jury, if under the evidence reasonable men might draw different conclusions. The forceful and exhaustive arguments presented by counsel for defendant convince us that the competency of Morin was very doubtful at least; but his incompetency does not appear so conclusively that we would feel justified in setting aside the judgment of the trial court upon this question. Meyers v. McAllister, 94 Minn. 510, 103 N. W. 564. There were, in addition to Morin's testimony, many circumstances proper for the jury to take into consideration in arriving at their verdict. We have quoted at length from the memorandum of the learned trial judge for the purpose of demonstrating how very far it would be necessary for this court to go in determining the questions of fact in order to reverse the order denying a new trial. We conclude that the evidence was sufficient to sustain the verdict.

2. The admission in evidence of the memorandum made by Morin of his scale was not error. He testified the entries were correct, and fully as to how he made the scale, making notations upon pieces of wood or board, and: "Q. Then at noon, when you went into the camp, what did you do with the figures, totals of the cars, which you had on this board? A. I checked back the additions, and put the figures in a memorandum book." The memorandum may not have been an account book, as that term is generally understood, but contained a record of the measurements made by the witness, and it was not error to place it before the jury in the manner permitted by the trial court.

The order denying a new trial is affirmed.