BARBER ASPHALT PAVING CO. v. CITY OF ST. PAUL, MINN. †

(Circuit Court of Appeals, Eighth Circuit.  June 23, 1915.)

No. 4398.

1. MUNICIPAL CORPORATIONS ⬤⟹368—STREETS—PAVING CONTRACTS.

A paving contract declared that the contractor guaranteed the pavement for a term of ten years, and for the purpose of effectuating the guaranty would keep the pavement in good and sufficient repair, and at the end of ten years deliver it in good order, reasonable wear and tear excepted. The contract further provided that if during the ten-year term it should be found that the work was defective from overburning or improper mixing or any other preventable cause, or that the work had been done in an unskillful manner, the contractor should, at its own cost, entirely replace the defective portion of the pavement to the satisfaction of the city's commissioner of public works, who should be the sole and only judge as to whether the pavement was in good order and condition during the continuance of and at the end of the term of ten years. It was provided that the contractor should receive compensation for making repairs necessitated by the tearing up of the pavement by public service corporations. Held, that the contractor was bound to maintain the pavement in good repair during the ten-year period free of charge.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. ⬤⟹368.]

2. MUNICIPAL CORPORATIONS ⬤⟹368—PUBLIC IMPROVEMENTS—PAVING CONTRACTS.

Where a paving contract expressly required the contractor to take notice of the condition of the soil and declared that he did the work at his own risk, the contractor having guaranteed the pavement for ten years cannot recover from the city for repairs occasioned by the nature of the subsoil, by the insufficient crown on the streets, or by the presence of street car tracks; the contractor being bound to notice those conditions before entering into the agreement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. ⬤⟹368.]

3. MUNICIPAL CORPORATIONS ⬤⟹368—PUBLIC IMPROVEMENTS—PAVING CONTRACTS.

Where repairs to a pavement were necessitated because of the escape of gas, that does not entitle the contractor to compensation from the city; it having guaranteed the pavement for ten years, even though the gas company might be liable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. ⬤⟹368.]

4. MUNICIPAL CORPORATIONS ⬤⟹368—PUBLIC IMPROVEMENTS—PAVING CONTRACTS—CONSTRUCTION.

Where the parties to paving contracts for over ten years construed such contracts as obligating the contractor to make repairs without compensation, the courts will give effect to that construction, though there was some ambiguity in the contracts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. ⬤⟹368.]

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied September 4, 1915.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action by the Barber Asphalt Paving Company against the City of St. Paul, Minnesota. There was a judgment for defendant, and plaintiff brings error. Affirmed.

This is a writ of error to reverse a judgment entered on the verdict of a jury in favor of the defendant in error, defendant in the court below, by direction of the court. The only question involved is upon the construction of the contracts entered into between the plaintiff paving company, and the city of St. Paul, hereafter referred to as the "city." There were twelve contracts entered into between the parties for the paving of streets. The first contract was entered into in 1901 and the last in 1907. The provisions of the contracts are practically identical so far as they affect the issues involved in this case. These provisions were:

"It is further agreed between the parties hereto, that the party of the first part shall, and does hereby guarantee the pavement by it to be constructed under the terms of this contract, and of the specifications hereto annexed and made a part hereof, for the term of ten years from the date of the completion of the work herein and hereby required to be done and performed, and its acceptance and approval by the board of public works of the party of the second part; and that, for the purpose of effectuating the foregoing guaranty, the said party of the first part shall and will keep said pavement in good and sufficient repair during the term of ten years aforesaid, repairing the same whenever settlements or irregularities causing a variation in the surface of three-eighths of an inch or over, measured within the length of a four foot straight edge, or any cracks of three-eighths of an inch or over in width, either of which show disintegration from any cause whatever occur, and at the end of said term of ten years shall and will turn said pavement over to the party of the second part hereto, in good order and condition, reasonable wear and tear excepted, making all the necessary repairs therein as specified above; and if during said term of ten years it shall be found that the pavement is defective from overburning or improper mixing, or any other preventable cause, or that the work has been done in an unskillful manner, the party of the first part hereto, shall, at its own proper cost and expense, upon the order of the commissioner of public works of the party of the second part, entirely remove any such defective portion of the pavement and replace the same to the satisfaction of the said commissioner of public works, who shall be the sole and final judge as to whether or not the pavement is in good and sufficient order and condition during the continuance of and at the end of the said term of ten years; and if at any time within the period for which the pavement is herein and hereby guaranteed by the said party of the first part, as above specified, it shall, in the judgment of the said commissioner of public works require to be repaired as further specified above, the said commissioner shall notify the party of the first part to make the repairs so required, and if the party of the first part shall fail and neglect to make such repairs within six days of the date of the service of such notice, then said commissioner shall have the right to cause such repairs to be made in such a manner as may be deemed best by him, pursuant to law, and the cost and expense thereof shall be paid by and recoverable from the said party of the first part hereto, or may be deducted from any balance remaining in the special fund hereinafter provided.

"It is further agreed between the parties hereto that for the purpose of further assuring the performance of the work to be done under this contract and for the purpose of assuring the performance of the guarantee hereinbefore set forth, during the period of ten years above mentioned, the party of the first part hereto will execute a bond conditioned therefor in an amount equal to twenty-five per cent. of the entire cost of the improvement, which said bond just above mentioned shall be executed and delivered to the said party of the second part, in a form to be approved by its corporation attorney, and placed on file with its city comptroller before any final audit or estimate shall be al-

lowed to the said party of the first part hereto as above mentioned, and further for the purpose of assuring the performance of the guarantee hereinbefore set forth, during the period of ten years above mentioned, the party of the second part hereto will retain ten per cent. of the entire cost of the improvement for the period of ten years from the date of the completion and acceptance of the pavement herein and hereby required to be laid and constructed, which said amount so retained shall constitute the special fund hereinbefore referred to, and the party of the first part hereto shall be entitled to interest at the rate of three per cent. per annum upon the balance remaining in said fund so retained, from time to time, subject however to the following conditions, to wit:

"If the party of the first part hereto, at the end of each six months from said completion and acceptance, shall have fully complied with all the terms and requirements of this agreement in the matter of guaranty repairs and of keeping the pavement in good and sufficient and proper condition, then, upon the order of the commissioner of public works, the said party of the first part shall be entitled to the interest on the said retained amount of ten per cent. of the contract price for such period of six months, but if the party of the first part shall have failed to make the necessary and proper repairs as directed by said commissioner at any time within said period of ten years from and after the date of the completion and acceptance of said work, then the said commissioner shall have the power to apply any interest then earned and unpaid, and if necessary, any part or all of said fund of ten per cent. so retained, to the making of such necessary and proper repairs as may be included within the terms of said guaranty."

The plans, profiles, and specifications for the letting of the contracts were expressly made a part of the contracts, containing in addition to the provisions hereinbefore quoted, the following:

"Bidders must examine and judge for themselves as to the location of the proposed work, the nature of the excavation to be made, and the work to be done. It is understood that the whole of the work under this contract is to be done at the contractor's risk, and he is to assume the responsibility and risk of all damage to the work or the property on the line of said work, which may be occasioned by floods, backwater, caving of the street, settling of the foundations of buildings or from any other cause whatever; and he shall remove from the street all surplus material, earth, rubbish, etc., immediately after the completion of the work."

From the time the work had been completed under the different contracts until October, 1912, the paving company made all the repairs necessary to keep the streets in good condition in conformity with the guaranty provision of the several contracts, without making any claim for compensation therefor, and, as was admitted by counsel at the hearing, without expectation of receiving any consideration therefor, the company being under the impression, which it is now claimed was a mistake, that it was obliged to do so under the terms of the contracts. These repairs were made without any direction from the city; the yardage of the repairs was measured daily and reported to the main officers of the company. The only charges which were made were for repairs on the streets made after the expiration of the ten years' guaranty, and such repairs as were made necessary by reason of the tearing up of the pavement by the public service companies. The bills for these last-mentioned repairs were sent to and collected from the public service companies, whose operations had necessitated the repairs.

Upon the conclusion of the testimony the court sustained a motion of the city for a directed verdict in its favor, upon the ground that under the contract between the parties the repairs sued for had to be made by the paving company at its own expense during the guaranty period of ten years.

The undisputed evidence shows that, at the time the plaintiff made its bids for the work and entered into the several contracts, it had knowledge of the gas mains and the street railway tracks, and was, under the specifications, required to take notice of the subsoil of the streets, and made its bids with such knowledge.

Morris M. Townley, of Chicago, Ill., for plaintiff in error.

Owen H. O'Neill and John P. Kyle, both of St. Paul, Minn., for defendant in error.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

TRIEBER, District Judge (after stating the facts as above).    On behalf of the paving company, it is insisted that by reason of that provision of the contracts which reads, "if during the said term of ten years it shall be found that the pavement is defective from overburning or improper mixing, or any other preventable cause, or that the work has been done in an unskillful manner, the party of the first part hereto (the paving company) shall at its own proper cost and expense, upon the order of the commissioner of public works of the party of the second part (the city) entirely remove any such defective portion of the pavement, and replace the same to the satisfaction of said commissioner of public works, who shall be the sole and final judge as to whether or not the pavement is in good and sufficient order and condition during the continuance of and at the end of the said term of ten years," the paving company was only required to repair them at its own expense for these causes and none other, and it is now claimed that the repairs for which this action has been instituted were made necessary by reason of: (1) The leakage of gas from gas mains; (2) the action of street railway tracks; (3) excessive sprinkling of the streets; (4) dirt permitted to lie in the gutters; (5) insufficient crowning on some streets; (6) the nature of the subsoil of some of the streets.

[1] If the provision above quoted were the only one in the contract providing for a guaranty of the work, the contention of the paving company would probably have some basis to rest on; but it is elementary that in construing a contract every part of it must be considered. Applying this rule, it is clearly apparent that the first part in that paragraph of the contracts refers to the guaranty for the maintenance and repairs of the pavement for the period of ten years, no matter for what causes, while the other provision refers to the workmanship in putting the pavement down.    The guaranty provision only required repairs, while the other applies to the work itself, which if found defective from "overburning or improper mixing, or any other preventable cause, or that the work has been done in an unskillful manner," the paving company obligated itself to "entirely remove such defective portions and replace the same to the satisfaction of the commissioner of public works of the city, at its own cost."    The language used is clear and without ambiguity that the paving company is to keep the pavements in good and sufficient repair during the term of ten years, the only exceptions being such repairs as were made necessary by the tearing up of the pavement by the public service companies for the purpose of laying or repairing mains for gas, sewer and water, and the right to make such repairs was granted to the paving company exclusively, which was to receive a higher compensation therefor than that paid by the city under the contract, and was to be paid by the public service companies whose acts made the repairs necessary.

[2, 3] The paving company, at the time it entered into the contracts, knew of the gas mains, and that there would naturally be some leakage of gas, and at times a considerable escape by reason of pipes breaking or joints loosening. It knew of the street railway tracks on the streets which it had contracted to pave; it knew from the specifications what the crowns on the streets would be, and whether they were sufficient or insufficient; and it was bound to take notice of the nature of the subsoil of the streets, as the specifications expressly provided for it. If the gas company was negligent in permitting gas to escape, which caused injury to the pavement, it may be liable to the plaintiff; but there is nothing in the contracts which imposes that liability on the city. These facts being well known to the plaintiff when it entered into the contracts, it cannot now be heard to claim compensation for repairs made necessary by them. That leakage of gas from the mains, under a contract such as this, does not relieve the paving company from its contract to repair was expressly determined in the City of Akron v. Barber Asphalt Paving Co., 171 Fed. 29, 36, 96 C. C. A. 271, 278; Barber Asphalt Paving Co. v. Louisville, 123 Ky. 687, 97 S. W. 31, 9 L. R. A. (N. S.) 154; and Brown v. Jenks, 98 Cal. 10, 32 Pac. 701.

[4] But even if there had been some ambiguity in the language used in the contracts the construction placed upon them by both parties during all that time, from 1901 until the institution of this suit in November, 1912, that these repairs had to be made by the paving company at its own expense, would effectually remove the ambiguity. The law is well settled that, if there is any doubt or ambiguity in a contract arising from the words employed, it is effectually removed by the practical construction continuously put upon it by the parties for so long a period as was done in this case. Chicago v. Seldon, 9 Wall. 50, 19 L. Ed. 594; Brooklyn Ins. Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. Ed. 1110; Manhattan Life Ins. Co. v. Wright, 126 Fed. 82, 61 C. C. A. 138; Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 72 C. C. A. 480; Uinta Tunnel, Mining & Transportation Co. v. Ajax Mining Co., 141 Fed. 563, 73 C. C. A. 35; Cook v. Foley, 152 Fed. 41, 81 C. C. A. 237; Guaranty Trust Co. v. Koehler, 195 Fed. 669, 115 C. C. A. 475.

We are clearly of the opinion that the learned trial judge correctly interpreted the terms of the contract and committed no error in directing a verdict for the defendant.

Affirmed.