HUGH STEELE v. CITY OF DULUTH.[1]

March 9, 1917.

Nos. 20,111—(251).

**Municipal corporation — defect in pavement — finding.**

1. The evidence is sufficient to sustain the finding of the trial court that certain defects in a street pavement were not due to defective material or workmanship.

**Same — guaranty of paving contractor.**

2. The guaranty clause in the contract for such paving is *held* to be a guaranty of good material and workmanship only.

**Limitation of action.**

3. Repairs were made during three successive years on separate orders for each year's work. The price of each year's work became due on its completion and the statute of limitations began to run from that time. This action having been begun in 1914, claims for work done in 1906 and 1907 were outlawed.

**Recovery for repairs to pavement.**

4. The contract allows recovery for repairs not necessitated by defective material or workmanship at $2.50 a square yard.

Action in the district court for St. Louis county to recover $3,071.25 for work and labor in repairing certain streets in defendant city. The answer alleged that the work was done pursuant to the terms of a contract between the parties and that plaintiff had been paid in full. The case was tried before Ensign, J., who made findings and ordered judg-

1Reported in 161 N. W. 593.

ment in favor of plaintiff for $437.50. Plaintiff's motion for additional findings was granted. An amended judgment was entered in favor of plaintiff for $6,555. Defendant's motion to set aside the amended findings was denied. From the amended judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*John E. Samuelson, Leonard McHugh* and *M. T. O'Donnell*, for appellant.

*J. H. Whitely* and *John B. Richards*, for respondent.

HALLAM, J.

In 1905 and 1906 plaintiff laid a tar macadam pavement on a street of Duluth under a written contract. By the terms of the contract the work was to be done according to specifications under the supervision of the city engineer and subject to his approval as to workmanship and material. Under heading "Guaranty" appeared several distinct paragraphs as follows:

"The contractor hereby agrees to guarantee the pavement constructed under these specifications for a term of five years from the date of the completion of the work under the contract and its acceptance by the city, and shall keep the same in good and sufficient repair during said period of five [years], repairing the pavement whenever settlements, holes, or any cracks of three-eighths (3-8) of an inch or over in width, or which shows disintegration from any cause whatever or any spots or places which show disintegration or raveling, occur; and at the end of said period of five years, to turn said pavement over to said city in good order and condition. If, during that period, it is found that the pavement is defective, from improper material or mixing of the same, or any other preventable cause, or that the work has been done in an unskilful manner, the contractor shall, at his own cost and expense, upon an order of the board of public works, entirely remove any defective portion of the pavement; and replace the same to the satisfaction of the said board of public works. Said board of public works shall be the sole and final judge, whether or not said pavement is in good and sufficient order and condition during the continuance of and at the end of said term.

"And it is further agreed, that whenever any repairs of the streets are made necessary from the construction or repairs of sewers, or sewer con-

nections, the laying of water or gas pipes, or water or gas connections or repairs thereof, or telegraph wires under the street or conduits of any kind, or repairs thereof, and for repairs of any of the same, or from any other disturbances of the pavement by parties acting under permits issued by the city or its authorized agents, or from other causes not due to defective material or workmanship, the contractor, on notification from the board of public works, shall make all the necessary repairs in conformity with the specifications for this work.  *  *  *

"The cost of such work or repairs as referred to in the preceding paragraph, which shall be done on said street after the completion of said contract work, and its acceptance by said city, shall be paid by the party or parties in whose interest and for whose benefit such work or repairs shall be done, at the price of two dollars and fifty cents ($2.50) per square yard of said pavement."

Within a few days after the pavement was completed, it was damaged by a circus parade, and, at the instance of the city engineer and city attorney, plaintiff repaired the damage.  In 1907, under a distinct order of the board of public works made that year, he made 1,245 yards of repairs.  In 1908, under another distinct order of the board of public works made in July of that year, he made 1,357 yards of repairs.  Part of the work done was in repairing holes in the street due to wear and part in restoring the pavement after work done under permits from the city.  On September 8, 1914, he brought this action to recover payment for the repairs made in 1908 at $2.50 a yard, and later amended his complaint so as to demand payment for the work done in the years 1906 and 1907.  The trial court found that the repairs done became necessary from causes not due to defective material or workmanship in constructing the pavement and gave judgment for the full amount claimed.  Defendant appeals.

The city contends: That the evidence does not sustain this finding; that in any event the guaranty clause in the contract is an absolute guaranty against all defects of the character named for five years, even though not caused by defective material or workmanship, and that the claim is barred by the statute of limitations.

1. We are of the opinion that the finding that the repairs necessary from causes not due to defective material or workmanship has evidence

to sustain it. The pavement was a failure, but the evidence is such that we cannot say that the court could not find that plaintiff was not at fault.

2. The question as to the nature of this guaranty is set at rest by the decision of this court in State ex rel. Wheeler v. District Court of Ramsey County, 80 Minn. 293, 83 N. W. 183. In that case the court had before it a paving contract which contained a guaranty clause in every essential particular like the one before us now. It was held that the guaranty was "a mere guaranty of good material and workmanship" and not an absolute guaranty of the durability of the pavement. The United States Circuit Court in Barber Asphalt Paving Co. v. City of St. Paul, 224 Fed. 842, 138 C. C. A. 558, in construing a contract substantially identical in form with that construed in the Wheeler case, came to the opposite conclusion and construed the guaranty an absolute one. The writer of this opinion takes this view and construes the guaranty clause a guaranty of durability as held by the Federal court in the St. Paul case and also in case of a similar contract in Wilson v. Inhabitants of City of Trenton, 60 N. J. Law, 394, 38 Atl. 635. The majority of the court are, however, of the opinion that the construction given in the Wheeler case was the right one. That decision is in any event *stare decisis* and we follow it here. It follows that plaintiff is entitled to recover the price or value of repairs done by him unless barred by the statute of limitations.

3. This action was commenced September 8, 1914. It seems clear to us that plaintiff's claim to compensation for the work done in 1906 and 1907 is barred. He contends that the guaranty clause of the contract provides for a "five years period of service," that no money was due him until the five year period was up in 1911. We cannot agree. He took no such view when, in 1909, he refused to proceed because he had not been paid for the work done in previous years. Apparently his attorneys did not take this view when they commenced this action and at first sued only for the work done in 1908. Nor do we think there is any evidence to sustain any such theory. The work done in 1906, 1907 and 1908 were three separate and distinct jobs. Each was ordered by a separate and distinct order. In each case about a year intervened between them. The work for each year was continuous in itself, but

there was no element of continuity from year to year, and surely it will not be said that either the contractor or the city officials contemplated continuity of employment for the purpose of repair of this new pavement. Each year's job of repair stands by itself. The price of each became due on its completion and the statute of limitations began to run from that time. Surely each year's items are as much distinct as in case of a running account and the statute of limitations bars recovery in such case for all items more than six years old when the suit was commenced. Reeves v. Sawyer, 88 Minn. 218, 92 N. W. 962.

As above indicated, the work done in 1908 was one job, done pursuant to the same order and in a continuous manner. No money was due for that job until it was completed. There is no finding as to when that work was .completed, There is some evidence that it was completed within six years of the commencement of this action. Since the statute of limitations is an affirmative defense, we cannot assume that it has run against the claim for work done during 1908.

4. Plaintiff is entitled to recover for this work at the contract price of $2.50 a square yard. This is the price fixed for in the third paragraph of the guaranty provision for "work or repairs as referred to in the preceding paragraph," "the preceding paragraph" includes work made necessary from all "causes not due to defective material or workmanship." This covers plaintiff's case.

The judgment is reversed and judgment will be entered for the amount found due for work and repairs in 1908.

On April 7, 1917, the following opinion was filed:

PER CURIAM.

Appeal from the clerk's taxation of costs.

The contract mentioned in the opinion contained 261 folios, 87 printed pages. Not over 36 folios or 12 pages had any bearing on the questions raised by the appeal. No useful purpose was subserved by transcribing or printing more than that. From the costs allowed the amount taxed for transcribing 225 folios and printing 75 pages of the contract should be deducted. So ordered.