### WILLIAM J. TIEDT v. EDGAR LARSON.[1]

June 8, 1928.

No. 26,759.

**Evidence in case made it error to direct verdict for plaintiff.**

1. Plaintiff claiming to be the holder in due course of the notes sued upon and there being evidence tending to show that his indorser, the payee, did not have possession or control of the notes at the time it is claimed he indorsed and delivered them to plaintiff, it was error to direct a verdict for plaintiff.

**When entries of notes in registers of bills payable, made by indorsing payee who is stranger to action, are admissible.**

2. Independent of and in addition to the "shop book rule" of common law and statute, which applies only to the account books in a

[1]Reported in 219 N. W. 905.

strict sense of parties to the action, there is another, not confined to account books, which admits in evidence entries made by a stranger to the action, in the regular course of business, for the purpose of recording the facts of transactions as they occur and under circumstances making for accuracy. The latter rule applied to registers of bills receivable and payable kept by the payee of notes who indorsed them to plaintiff.

Bills and Notes, 8 C. J. p. 1062 n. 62.
Evidence, 22 C. J. p. 862 n. 34; p. 885 n. 88.

See note in 53 L. R. A. 513; 10 R. C. L. 1176; 2 R. C. L. Supp. 1164; 7 R. C. L. Supp. 346.

Defendant appealed from an order of the district court for Marshall county, Grindeland, J. denying his motion for a new trial. Reversed.

*E. A. Brekke, L. S. Miller* and *W. E. Rowe,* for appellant.
*Julius J. Olson* and *Oscar R. Knutson,* for respondent.

STONE, J.

Action by an indorsee against the maker on two promissory notes. At the trial below the one defense of an alleged offset, which defendant claims to have against the maker of the notes, was not reached because plaintiff had a directed verdict upon the theory that he had established as a matter of law his position as holder in due course. The appeal is from an order denying defendant's motion for a new trial. Our conclusion that there must be a reversal, because the evidence made it a jury question whether plaintiff was a holder in due course, requires a consideration in some detail of portions of the evidence.

1. Plaintiff is a long-time resident of Missoula, Montana. He is a brother of Fred Tiedt, formerly a merchant at Argyle in this state and the payee and indorser to plaintiff of both notes. The first, for $108, bears date of September 30, 1925, and matured October 1, 1926. The other is for $165, bears date of October 2, 1925, and also matured October 1, 1926. The evidence for plaintiff tended to prove that on September 4, 1926, less than a month before the maturity of the notes, they, together with others, aggregating in principal

nearly $6,000, were mailed by Fred Tiedt to plaintiff as security for a large debt to the latter. Plaintiff does not claim that he demanded the collateral from his brother and did not produce the original letter transmitting the notes. He admits that upon Fred's suggestion they were speedily returned to him for collection. Most if not all of the makers resided in the vicinity of Argyle and doubtless were his customers and well known to Fred Tiedt. The latter produced what he identified as carbon copies of his lettter transmitting the notes and the accompanying list of notes.

So plaintiff's claim is that he was the indorsee and holder of the notes from September 4, 1926, to their maturity on October 1. Fred Tiedt in the meantime has gone into bankruptcy, and from his registers of bills payable and receivable and other testimony it was clearly open to the jury to reject plaintiff's claim and find that from December 10, 1925, to November 8, 1926, or later, the $165 note was not in the possession of either plaintiff or Fred Tiedt but was held by the U. S. Rubber Company as collateral to a note against Fred Tiedt. In other words the evidence tended to show that at no time during that period was the note in either the possession or legal control of Fred Tiedt so that he could have indorsed and delivered it or caused its indorsement and delivery to plaintiff. Both notes, if pledged to plaintiff as he claims, were mailed to him as already stated. So if on this phase his case falls as to one of the notes, it may fall as to both.

The $165 note, in addition to its other marks of identification, bears the serial number 7135. It is so referred to in the registers of bills payable and receivable kept by Fred Tiedt. The former shows that on December 10, 1925, he gave his note for $113.95 to the U. S. Rubber Company and pledged as collateral thereto a note of Edgar Larson for $165 and numbered 7135. The bills receivable register also indicates that note No. 7135 of Edgar Larson was pledged to the rubber company. It does not show when it was surrendered by the pledgee. The same records show, and this is not denied, that he also pledged to the U. S. Rubber Company as collateral a note against one Dombek for $100 and numbered 7137.

That note is in evidence as defendant's exhibit S. It bears in blue ink this indorsement:

"Waiving Notice Protest

"Fred Tiedt"

and this:

"Pay to the American Railway Express Co.
    "U. S. Rubber Company,
            "By M. E. Culhane
                "Atty. and Agent."

This indorsement, except Mr. Culhane's signature, is in black typewritten letters.

The Edgar Larson note, No. 7135, bear this indorsement:

"*Pay Wm. J. Tiedt or order*
"Waiving Notice of Protest
            "Fred Tiedt"

The portion we here italicize is written in *black* ink; the other portion apparently in the same blue ink used for the first indorsement on the Dombek note. As it now stands, *black* pen lines have been drawn through the words "Waiving Notice of Protest." Also, there are five lines of typewritten X's over as many lines of something that has been erased. If comparison is made, with the aid 'of a glass, between the black typewritten indorsement to the U. S. Rubber Company on the Dombek note and the portion of the Larson note, No. 7135, where the five lines of X's now appear, it is apparent that the indorsement erased and sought to be covered by the X's may have been identical with that of the Dombek note to the U. S. Rubber Company.

So the evidence points strongly to the conclusion that note No. 7135 accompanied the Dombek note when Fred Tiedt on December 10, 1925, pledged the latter to the U. S. Rubber Company. If it did, he did not have it in his possession or under his control on September 4, 1926, when he claims to have indorsed and transmitted it to his brother, the plaintiff. The collateral to the U. S. Rubber Com-

pany probably was not surrendered until it was paid, or not earlier than November 8, 1926. All this clearly made it a fact issue not only as to whether plaintiff acquired the notes in suit in the usual course of business but also whether he acquired them in good faith and before maturity. For these reasons, we think it was error not to submit the case to the jury upon the issue of plaintiff's being a holder in due course. Farmers State Bank v. Cooke, 149 Minn. 227, 183 N. W. 137, and cases cited.

2. It is objected that the records of Fred Tiedt were res inter alios acta and so inadmissible against plaintiff, citing 10 R. C. L. 1176; 22 C. J. 741. That argument overlooks the fact that the books here in question are mere registers of bills payable and receivable. The law of evidence does not consider them books of account because they are not the record of goods sold or services rendered. 1 Wd. & Phr. 840.

Fred Tiedt's entries concerning the Edgar Larson note, No. 7135, are concurrent declarations of the then owner, as of December 10, 1925, that he then parted with the possession and control of the note under such circumstances that normally he would not recover it until he paid his debt to the U. S. Rubber Company. That was not done until November 8, 1926, or later. They indicate that at the time both plaintiff and he claim that it was transferred to plaintiff by indorsement and delivery it was impossible for him either to indorse or deliver. But the rule admitting declarations of a prior against a subsequent owner (for which see 2 Dunnell, Minn. Dig. [2 ed.] § 3417) does not apply ordinarily as against the holder in due course of a negotiable instrument. Wigmore, Ev. § 1084. The theory is that, inasmuch as a holder in due course, by force alone of the peculiar law of negotiable instruments, is immune from defects in his indorser's title, he should not be prejudiced by the latter's declarations concerning that title. For example, the payee's admission of want of consideration or fraud upon the maker would not be admissible as against one who takes from the payee as a holder in due course.

Such being the reason for the rule, it is questionable whether it operates upon a declaration, such as we have here, going not to the title of the declarant but rather and only to the physical facts of the location and manual disposition of the instrument. That problem we pass without decision, for the admissibility of Fred Tiedt's entries does not have to rest either upon the rule admitting declarations against interest or that of res gestae. Entries in books of account are admissible, not alone under the "shop book rule" of the common law and statute (G. S. 1923, § 9876) which admits only the "account books" of a party to the "cause or proceeding." Independent of and in addition to that rule is another which is not confined to books of account nor to records made by a party to the action. As formulated from our decisions it is this: "Entries or memoranda made by third parties in the regular course of business, under circumstances calculated to insure accuracy and precluding any motive of misrepresentation, are admissible as prima facie evidence of the facts stated." 2 Dunnell, Minn. Dig. (2 ed.) § 3346. Its historical and practical justifications are stated in Wigmore, Ev. § 1517, et seq. It is there said, § 1521, that to invoke the rule it is necessary "that the witness should be somehow unavailable." That condition is no longer an essential of admissibility. (G. S. 1923, § 9877, concerning book entries by a person since deceased adds nothing to their admissibility but declares only what foundation shall be laid.)

"The value of the entry, as evidence, lies in this, that it was contemporaneous with the principal fact done. * * * It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily indeed but ordinarily and naturally, to the principal thing. It is on this ground, that this latter class of entries is admitted; and therefore it can make no difference, as to their admissibility, whether the party who made them be living or dead, nor whether he was, or was not, interested in making them, his interest going only to affect the credibility or weight of the evidence when received." 1 Greenleaf, Ev. (16 ed.) § 120 (quoted and approved in C. & N. W. Ry. Co. v. Ingersoll, 65 Ill. 399, 404); Patteshall v. Turford, 3 B. & A. 890.

Put in another way, it is the truth telling habit of such business records that makes them admissible. Their normal purpose to record fact, the magnitude and complexity of modern business is more and more requiring records which are not only truthful but complete. The law therefore does not turn its back on them when in search of the truth. Moreover, it realizes that the identity of the recorder has not much to say in the ordinary case as to the truth of the record. It is rather its purpose, character, manner of keeping and the habit and necessity for truth telling that makes for its competency as evidence, a result to which the presence of the recorder adds nothing and which his absence cannot prevent.

The law would strangely ignore the fixed habit and necessity of business to make correct entries of its transactions if it did not admit such entries as prima facie evidence of what they record. It resorts to them even when they may contribute to depriving the defendant of his liberty, as in State v. Virgens, 128 Minn. 422, 151 N. W. 190, a murder case where the record of the sale of a pistol by a mercantile establishment was allowed in evidence against defendant. See also Swedish-Am. Nat. Bank v. C. B. & Q. Ry. Co. 96 Minn. 436, 105 N. W. 69; Fortier v. Skibo Timber Co. 111 Minn. 518, 127 N. W. 414; Kitman v. C. B. & Q. R. Co. 113 Minn. 350, 129 N. W. 844; Sill v. Reese, 47 Cal. 294.

The sufficiency of the preliminary proof to admit "regular entries" is for the trial judge. It is a problem with respect to which his discretion is not narrowly limited. Some records, for example those made after an action has been commenced or a controversy has arisen, may be open to question. But made in the ordinary course of business and before any issue arises, they are "prima facie consistent with truth" and have "all the appearance of exactitude." Poole v. Dicas, 1 Bing. N. C. 649. Such entries are usually good evidence, for they have no purpose but to show the facts and their recollection does not change, as may that of a witness who has become interested to have a law suit go his way or that of his friend or relative.

The point has not been argued, and so we pass it without decision, but in case of a new trial counsel might find it profitable to

consider whether the unexplained erasure (as distinguished from a frank and normal cancelation) of an entire indorsement did not destroy the negotiability of the instrument by rendering it incomplete and/or irregular on its face within the meaning of G. S. 1923, § 7095, N. I. L. § 52. Even if negotiability were not destroyed, the question might remain whether the circumstance was such as to put a purchaser upon inquiry. Minneapolis T. M. Co. v. Gilruth, 109 Minn. 23, 27, 122 N. W. 466; Drew v. Wheelihan, 75 Minn. 68, 77 N. W. 558. Compare Allen v. Cooling, 161 Minn. 10, 200 N. W. 849.

Order reversed.