SIMON MEYERS AND ANOTHER v. BARRETT & ZIMMERMAN, INC. AND OTHERS.[1]

January 24, 1936.

No. 30,689.

[1]Reported in 264 N. W. 769.

*Meshbesher & Anderson* and *George S. Grimes,* for appellants.
*Kyle & Kyle,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiffs appeal from an order denying their motion for a new trial. The only defendant involved in this appeal is Barrett & Zimmerman, Incorporated. Hereafter we shall refer to Mr. Meyers as plaintiff and to defendant corporation as defendant.

Suit was brought to obtain (1) an accounting of many old transactions, nearly all of which date back 10 to 20 years prior to bringing of the present cause; (2) to recover attorney's fees and disbursements aggregating more than $8,000, the services rendered and expenses incurred having accrued some 10 or more years prior to bringing suit; and (3) for partition of certain real estate.

The cause was heard by the court. That the many issues and claims involved were given very careful attention and consideration by the court is apparent as the findings and conclusions cover more than 40 pages in the printed record. The court's thoroughness has much simplified our work in going through the voluminous record and the many exhibits involved. The determinative facts are comparatively simple, and the legal problems involved are neither difficult nor doubtful.

The record justified finding the following facts: Prior to 1908 John D. Barrett and Moses Zimmerman were copartners under the name of Barrett & Zimmerman. Their principal business was buying and selling horses, saddlery, harnesses, and other miscellaneous items. They continued in that business until March 25, 1925, at which time they formed a corporation, defendant Barrett & Zimmerman, Inc. That corporation took over all partnership property and assumed its liabilities. The stock issued was divided equally between the former partners, and to each partner's wife was given one share so as to have the qualified number of incorporators.

In November, 1909, these men organized a corporation also known as Barrett & Zimmerman, Inc. The ownership of the stock in this enterprise was exactly the same as outlined above. The business of that concern was buying, selling, and dealing in real estate. At the time of the formation of the new corporation in 1925 the old corporate enterprise likewise was absorbed by the present defendant, *i. e.,* defendant succeeded to the rights and liabilities of both the former copartnership and corporate enterprise.

Mr. Zimmerman died in May, 1933, prior to the commencement of the present suit; Mr. Barrett in March, 1934, immediately after its commencement. Plaintiff Simon Meyers is a practicing attorney and has been actively engaged in his profession over a period of more than 50 years. Commencing in 1908 and continuing until about the first of January, 1922, he acted as attorney and counselor for the copartnership and the first Barrett & Zimmerman corporation, including also Moses Zimmerman in his individual capacity.

In 1908 Mr. Zimmerman, in behalf of his copartnership and himself, made an oral agreement with plaintiff to the effect that the copartnership would furnish money to purchase certain real property in the Minnesota Transfer district. It was thought that this property would be of value for trackage and industrial purposes. Plaintiff was to render services in respect of looking up and locating desirable properties and contacting the owners thereof, examining titles, and assisting in making sales. The profits and losses of the enterprise were to be shared by the partnership and plaintiff in proportion of two-thirds to the partnership and one-third to plaintiff. Pursuant to this arrangement considerable property was acquired, the copartnership furnishing the funds and plaintiff rendering services, all as contemplated by the oral arrangement. It seems that when the corporate enterprise was organized in 1909 the same arrangement was permitted to exist as to it. Sales were made from time to time and accounted for. The venture proved profitable, and the best of feeling apparently existed amongst the interested parties. But later there developed some sort of disagreement. Whatever its cause, the difficulty between plaintiff and defendant had its inception prior to January 1, 1922. The record

leaves no room for doubt that from that time he was no longer engaged in his professional capacity by defendant.

In respect of the suit for partition of real estate, the court ordered referees appointed to make partition thereof; that they proceed to make partition after having taken the required oath as such referees. Further, that if they should find that the real estate or any part thereof is so situated that partition cannot be had without great prejudice to the owners, they were to report that fact to the court. The court retained jurisdiction and control over the suit and all proceedings of the referees to be had thereafter.

Plaintiff has conveniently listed his various claims regarding items involved in the accounting suit. As a part thereof and included therewith are his claims for attorney's fees and disbursements. There are eight principal items entering into this phase of the case, the first sum involved being $8,823.47, and the last and smallest $9.17. The first and the largest relates to the so-called "Boutell land." It appears that in 1910 plaintiff entered into some correspondence with the owners of this tract. Plaintiff was the regularly employed attorney for the copartnership and the then corporate entity Barrett & Zimmerman. Title to the property was procured and ran to one Walter D. Boutell by deed bearing date June 11, 1910. Afterwards, in October, a written agreement was entered into between Boutell and Zimmerman reciting in substance that this property had been purchased in common by them for $25,500, of which $7,500 had been paid and a mortgage for $18,000 executed to secure the payment of the balance. Of the cash payment made, Boutell had contributed $6,500, Zimmerman $1,000. Title was taken in the name of Boutell for the mutual benefit of both. Provision was made that when Zimmerman repaid Boutell such amount as would make the cash investment of each equal, Boutell was to give Zimmerman a deed of an undivided interest subject to the mortgage. The agreement further provided that when the premises were sold each party was to be repaid the amount of his respective investment; and, after paying encumbrances, the net profits were to be divided equally. This agreement was prepared by plaintiff in his professional capacity. No mention therein

was made that plaintiff had any interest in the property. As a matter of fact the property was held until July 20, 1922, when it was sold and large profits derived therefrom. During the intervening period no taxes were paid by or charged to plaintiff or defendant Dooley (who also claimed an interest), and no statements were ever rendered to them or either of them for taxes or other carrying charges. In other deals wherein plaintiff had an interest statements were rendered from time to time for taxes, interest, and other carrying charges. Further to be noted is the fact that defendant had a complete set of books. Whenever a deal was made appropriate book entries would show the names of the interested parties and the extent of interest of each in the ownership, whether such ownership was a matter of record in all of them or in but one individual for the benefit of others. Suitable book entries were made of all receipts and disbursements relative to each tract so acquired. From time to time statements were made and rendered showing the status as to each such tract. The court concluded, upon the facts hereinbefore related and because of the long time that had elapsed since the deal was made and fully completed, both Barrett and Zimmerman having died, thus leaving defendant unable to meet plaintiff's present claims, that there should be no recovery. There should be added also the further fact that the record shows, by plaintiff's own admission, that he knew of this sale within a year or two after it was made, yet neither he nor Dooley at any time ever claimed any interest in the land or in the profits from the sale thereof until the time of trial. Boutell died some six or seven years prior to the commencement of the action. There can be no doubt that, in view of what has been related, the court correctly disposed of this item.

The next claims of consequence relate to certain attorney's fees and disbursements, the first being a statement of charges bearing date March 23, 1918, including items for services rendered from July 25, 1914, to January 1, 1918, the total thereof being $773; and the next a statement in the amount of $5,581.03 covering the period from April 24, 1918, to December 12, 1921. Amongst the items therein is one of $5,000 for services "in the McFadden & Jones case."

There is no question that $1,500 had in fact been paid by defendant, and its books show that the final payment of $550 "balance McFadden & Jones case" was treated by it as the final payment of that account.

As will be noted, all these claims were for services rendered prior to 1922. Since then plaintiff has rendered no service in a professional way for defendant or for either Barrett or Zimmerman individually. Thus it is obvious that over a period of nearly 12 years this large claim was carried by plaintiff while the parties were still living. It seems strange indeed that a lawyer would permit such large items to stand unpaid upon his books where the client was as capable of meeting the same as defendant admittedly was.

Other items entering into these transactions are subject to the same difficulty. All thereof except the last go back to or beyond 1922. The total amount claimed by plaintiff is more than $20,000. Yet he has allowed this large sum to lie dormant, in fact fast asleep. The interest alone on this sum at the legal rate would amount to more than $1,200 per annum. In his brief plaintiff graciously refrains from asking interest until after December 28, 1932, thus waiving claim to more than ten years of interest, a very large item indeed.

It is not at all likely, nor can it be said to be the general experience of men, that such condition would be permitted so to remain were the claims in fact genuine and worth-while. Lawyers should be better qualified than any other class to know when a claim becomes too stale for enforcement. Plaintiff, having elected to come into court, must necessarily meet and overcome the same hurdles as the ordinary litigant.

The last item, $9.17, is claimed by plaintiff to arise out of the following facts: On August 13, 1917, defendant collected $20 as rent of the Bowen land, and on July 7, 1932, the further sum of $7.50. Plaintiff's one-third thereof is the amount stated. In the court's findings, paragraph 24, this appears:

"There is due and owing to the plaintiff, Simon Meyers, on account of rents collected on the Cole and Weeks land and the Bowen

land less taxes paid on said lands, and on some other lands in which the parties are jointly interested, which have become intermingled with the Simon Meyers account, as shown in the books of Barrett & Zimmerman, Incorporated, introduced in evidence in this case, the sum of fifteen and 79-100 ($15.79) dollars, and no more."

This sufficiently answers plaintiff's claim with regard to this item.

Upon this state of the record it is obvious that the court was not only justified in finding against plaintiff but compelled so to do as to all items except as set forth in paragraph 24 of the findings.

Plaintiff's criticism of defendant's book entries are without merit. At most, fact questions alone are involved. Nor should triers of fact lightly treat books regularly kept by a concern doing as extensive a business as did defendant over this long period of time. Admittedly they were business records and so kept. As such these were properly admissible in evidence. 2 Mason Minn. St. 1927, § 9876. As to the probative force thereof, see Rudd Lbr. Co. v. Anderson, 161 Minn. 353, 356, 201 N. W. 548.

This court in Tiedt v. Larson, 174 Minn. 558, 564, 219 N. W. 905, 907, said:

"* * * it is the truth telling habit of such business records that makes them admissible. Their normal purpose to record fact, the magnitude and complexity of modern business is more and more requiring records which are not only truthful but complete. The law therefore does not turn its back on them when in search of the truth. Moreover, it realizes that the identity of the recorder has not much to say in the ordinary case as to the truth of the record. It is rather its purpose, character, manner of keeping and the habit and necessity for truth telling that makes for its competency as evidence, a result to which the presence of the recorder adds nothing and which his absence cannot prevent.

"The law would strangely ignore the fixed habit and necessity of business to make correct entries of its transactions if it did not admit such entries as prima facie evidence of what they record. It resorts to them even when they may contribute to depriving the defendant of his liberty, as in State v. Virgens, 128 Minn. 422, 151

N. W. 190, a murder case where the record of the sale of a pistol by a mercantile establishment was allowed in evidence against defendant."

Plaintiff has been paid very large sums of money for services rendered in his professional capacity. Many settlements were made from time to time. He derived generous profits out of real estate transactions in which his investment in many instances was in the nature of services only.

In respect of the real estate involved in the partition suit, the issues are purely in relation to facts. Neither the parties nor the bar can in any way be served by a review with regard thereto. The trial court upon adequate proof has disposed thereof, and nothing further can or need be said.

Plaintiff's claims are lacking in genuineness, musty from age, and wholly devoid of convincing force. Sufficient here is the terse language used by the trial court in a memorandum attached to and forming part of the order here for review:

"After having made a careful resurvey of the record in this matter, the court finds no good reason for changing its decision. *. * * The plaintiff, Mr. Meyers, apparently in good faith, asserts a right to a share in the profits of a resale of the so-called Boutell tract here involved, but has offered no direct or satisfactory proof, documentary or otherwise, in support of his claim; but relies entirely on inferences to be drawn mainly from his conceded interest in other adjoining and adjacent tracts. Notwithstanding the obvious lack of proof, he demands vehemently that the court, sitting as a court of equity, give him substantial relief. Neither the friendly disposition of the court toward lawyers as litigants nor any rule or doctrine of law or equity known to the court will justify it in granting equity where there is no equity. Equally impossible is it to allow plaintiff anything for attorney's fees claimed to have been earned, for the most part, many years before 1922, during which year, under the evidence, the relation of attorney and client, between himself and Barrett & Zimmerman, ceased. The right of recovery for fees at this time is negatived not only by the great

284

lapse of time during which no claim therefor was asserted, but by what the court considered as satisfactory proof that long before the commencement of this action, and while all parties concerned were living, there was a complete adjustment and settlement and payment therefor."

Plaintiff's claim, to avoid the statute of limitations, that this was a mutual, open, and running account cannot be sustained. The court found otherwise and, we think, upon adequate proof. Paragraph 23 of the findings reads:

"Since the purchase of the Cole and Weeks land there has been no new transaction between the parties. Their relations since the disposal of the Le Sure land and the Van Reed land in July, 1922, have been that of tenants in common of the Cole and Weeks land, and the Bowen land. In connection with those, the defendant, Barrett & Zimmerman, Incorporated, paid taxes from time to time in whole or in part, and collected rents from time to time, and there have been no claims or charges on the side of the plaintiff, Simon Meyers. The account has been a one-sided account. There is not, and there never has been, any mutual, open and current account, with reciprocal demands between the parties to this action, and the action is not one to recover a balance due upon a mutual, open, and current account."

"In order that an account may be considered an account current, or a running account, it must appear that, by agreement of the parties, express or implied, all the items thereof are to constitute one demand." 1 A. L. R. anno. p. 1062, subd. III.

Likewise, where transactions are separate and distinct, no open or running account can be claimed. Steele v. City of Duluth, 136 Minn. 288, 161 N. W. 593. See also 17 R. C. L. p. 730, § 91.

Plaintiff's complaint negates the theory of such open and running account. The suit was obviously intended, and the complaint so states, to accomplish an accounting.

The order is affirmed.