## IN RE DELINQUENT REAL ESTATE TAXES FOR 1920. POTLACH TIMBER COMPANY, OBJECTOR AND APPELLANT.[1]

July 18, 1924.

No. 24,068.

**Fixing assessment value of real property.**

    1. In determining the value of real property for assessment purposes, the usual selling price of like property in the same locality is the standard of value to be adopted.

**Fixing sale value of such property.**

    2. To ascertain the sale value of the property, among the elements which it is proper to consider are its location, the revenue derived from it and the cost of reproduction of the improvements.

**Property over-valued by assessor.**

    3. Measured by the standard of value prescribed by the statute, the true and full value of appellant's property was less than the amount at which it was assessed, and the finding that it was not over-valued by the assessor cannot be sustained.

In the matter of proceedings in the district court for Ramsey county to enforce the payment of delinquent real estate taxes for the year 1920, the Potlach Timber Company filed objections. The matter was tried before Haupt, J., and after his death submitted, on the transcript of evidence, to Michael, J., who made findings and ordered judgment as stated in the first paragraph of the opinion.

[1]Reported in 199 N. W. 968.

From an order denying its motion for a new trial, the objector appealed. Reversed.

*Thomas C. Fitzpatrick, William F. Hunt* and *B. H. Schriber*, for appellant.

*Harry H. Peterson* and *Roy A. MacDonald*, for respondent.

LEES, C.

This is a proceeding to enforce the payment of delinquent real estate taxes, in which the property owner interposed the defense that the assessment was in excess of the true and full value of the property. The assessor had valued it at $99,000 and the tax commission had added 7 per cent to the valuation. The answer alleged that the maximum valuation should not have exceeded $60,000. The trial court found that the true value of the property on May 1, 1920, was $99,000, denied a motion for a new trial, and the owner appealed.

The property is located opposite the Union Depot in the city of St. Paul. It consists of two lots with a frontage of 100 feet on East Third street and a depth of 132 feet. A five-story building of practically the same frontage and depth was erected on the lots in the year 1899. For many years the district was occupied by wholesalers and jobbers, but when the construction of the Union Depot was begun in the year 1918 many of the buildings in the district were demolished and the character of the neighborhood was changed. A portion of the depot spans East Third street, which has been lowered through the block west of appellant's property, and elevated railroad tracks occupy all the ground on the side of the street opposite the property. There is no longer any considerable amount of travel over the street east of the depot. It is not likely that there will be any change in these conditions in the future.

Until March 1, 1918, the annual rental of the building had been $6,000. From March 1, 1918, to October 1, 1918, the rental was $125 a month; for the 5 months following, $25 a month; and for the next 7 months the building was vacant. From March 1, 1920, to the time of the trial, the annual rental has been $900. Ever

since the year 1918 the income has been less than the taxes, cost of insurance and other carrying charges. Some witnesses expressed the opinion that by an expenditure of $15,000 or $20,000 in alterations of the building the rentals might be increased.

The original cost of the building and ground was $111,000. The replacement cost of the building is not in evidence, but it was shown that insurance was carried amounting to $78,300.

Section 1987, G. S. 1913, reads in part as follows:

"All property shall be assessed at its true and full value in money. In determining such value, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which the said property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money."

Section 1975, G. S. 1913, defines "true and full value" as follows:

" 'True and full value' shall mean the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained therefor at private sale, and not at forced or auction sale."

The state called three witnesses to testify to values. All were experienced real estate brokers, appointed by the St. Paul Real Estate Board, at the request of the county attorney, to make an appraisal. They valued the land at $40,825 and the building at $60,000. On cross-examination, each was asked what he thought the property could have been sold for on May 1, 1920. One answered: "Why, I think about $100,000"; another, "$75,000"; and the third, "$70,000."

The value of improved real estate is affected by a variety of circumstances. Among them are the location and surroundings of the property; the probability or improbability of improvement in the district where it is located; the income the property will produce in its present condition; the income it would probably produce

if changes were made in the construction or arrangement of the building; and, most important of all, the price at which it can be sold. In arriving at a conclusion as to the price he will pay for a piece of property, a purchaser is not greatly interested in the original cost of the building or in the cost of replacing it, or in its insurable value. The present selling price of similar buildings in the same locality is the criterion of value in the eyes of a purchaser, and not the intrinsic worth of the building to the owner or occupant. In short the test is: What will the property bring if offered for sale to a buyer desirous of purchasing property of the same general character in the same locality?

Wisconsin has a statute not materially different from ours. It was expounded in State v. Weiher, 177 Wis. 445, 188 N. W. 598, where Chief Justice Vinje said:

"The statute fixes the test. * * * That it is the best test that can possibly be devised we have no doubt. As to the great mass of taxable real estate it furnishes the only fair and safe touchstone— one that extrinsic facts—actual sales of like or similar property— can conclusively establish; thus in as large a measure as possible eliminating the mere judgment of the assessor, and enabling an owner or the assessor, as the case may be, to prove the valuation by facts which he has had no part in establishing or shaping and which do not lie solely in any man's judgment. * * * It must be borne in mind that the state asks a tax only upon the business value of the property of its citizens, if that term may be used, because such value is readily ascertainable for reasons already stated. * * * The state says, tax it at its sale value. It is not ultimately a question of cost, of cost of reproduction, of revenue derived from its use, of location, but of all these and of all other elements that go to determine sale value."

The legislature has provided that, where real property has been assessed and taxed at a valuation greater than its real and actual value, the court may reduce the amount of taxes thereon and give judgment accordingly. Section 2108, G. S. 1913. The owner objecting to the amount of the tax has the burden of proving that his

property was overvalued. In State v. Koochiching Realty Co. 146 Minn. 87, 177 N. W. 940, it was intimated that he would have to make it clear—and manifestly apparent that it was overvalued. Even under that rule, we are constrained to hold that appellant's property was assessed at more than its true and full value, as value is defined by subdivision 5, § 1975, G. S. 1913.

One of the witnesses for the state said that, if he was permitted to hazard a guess, he thought the property could have been sold for $100,000 on May 1, 1920. That was the nearest approach to an opinion by any of the state's witnesses that a sale could have been made for more than $75,000. Manifestly such evidence as this would not support a finding that the sale value was $100,000. If the question was whether the property was intrinsically worth that amount to the person who happened to own it, a different conclusion might be justified. The theory that the inherent value of property should be the basis for an assessment is not permissible in view of the language of the statute. If that was the theory upon which the case was tried and decided, it was erroneous. If, on the other hand, it was tried on the theory that the usual selling price of property at private sale furnishes the criterion of value, the evidence will not support a finding that the property was worth $99,000.

Much stress is laid upon the fact that the building was insured for $78,300. The standard form of policy prescribed by section 3318, G. S. 1913, provides that, in case of the destruction of a building, the insurer shall either pay the amount for which it is liable under the policy or rebuild or replace the property at its option. Section 3323, G. S. 1913, prohibits the insurance of property for an aggregate amount in excess of its fair value. Section 3322, G. S. 1913, authorizes coinsurance and reduced premium rates. Where there is coinsurance the actual cash value of the property when destroyed is the basis for determining the amount of the loss. It is a matter of common knowledge that property owners do take out coinsurance to get the benefit of reduced premium rates, hence the total amount of insurance carried is not always evidence of the value the owner placed upon his property.

We cannot escape the conclusion that appellant's property was assessed at more than its true and full value and that upon the showing made at the trial appellant was entitled to have the assessor's valuation reduced.

The order denying a new trial is reversed and a new trial granted.

DIBELL, J. (dissenting.)

I dissent. Five witnesses gave their opinion, two called by the property owner, and three, chosen by the real estate board upon request of the county authorities to make a valuation, by the state. All were competent. The two testifying for the defendant put the value, one at $60,000 or $70,000, the other at $65,000. The state's three, when they viewed the property together, fixed the value at $100,825. Upon a prolonged cross-examination one did not sustain his valuation well. The other two held fairly well to a value of $100,000. I agree with the prevailing opinion that the fact that the owner insured the building alone for $78,300, while claiming the building and land together were worth only $60,000 or $70,000, is not controlling, though it has effect. Nor does the fact that the property is substantially nonproductive deprive it of value. Plenty of well-improved property, producing only a nominal interest return, or none at all, has present value which real estate experts correctly enough estimate. My impression from a reading of the evidence inclines to a lower value than $99,000. The question of value was a question of fact, to be determined by the trial court, and the evidence supports its finding.

HOLT, J. (dissenting)

I concur in the dissent of Justice Dibell.