IN RE DELINQUENT TAXES FOR 1924 AND 1925, KITTSON
COUNTY.
STATE v. L. C. FRITCH AND ANOTHER.[1]

November 9, 1928.

No. 26,897.

**Reduced valuation of unimproved lands sustained.**
    1.  The evidence sustains the valuation for taxation of certain un-
improved lands as reduced by the court.

**Intentional overvaluation of unimproved and undervaluation of improved
        lands not proved.**
    2.  Defendants failed clearly to prove that the assessing authorities,
in determining the value of lands, intentionally and systematically
overvalued the unimproved and undervalued the improved, and were
not entitled to the finding requested and denied on that issue.

Taxation, 37 Cyc. p. 1311 n. 8.

Two actions in the district court for Kittson county, tried to-
gether, to enforce payment of taxes on real estate in said county
levied in 1924 and 1925 and delinquent in 1926 and 1927, respec-
tively.  There were findings reducing the valuation and tax on the
several tracts.  From an order, Grindeland, J. denying their motion
for a new trial, defendants as trustees of the Chicago, Rock Island
& Pacific Railway Company, appealed, their contention being that
as so reduced the valuation and tax is still excessive.  Affirmed.
    *O'Brien, Horn & Stringer,* for appellants.
    *A. D. Bornemann,* County Attorney, for the state.

HOLT, J.
    Appeal from the order denying defendants a new trial in pro-
ceedings to enforce payment of delinquent taxes on real estate in
Kittson county.

[1]Reported in 221 N. W. 725.

The court made findings reducing the valuation and tax upon the several tracts. But the claim is made that as so reduced it is still excessive. It is further contended that the assessments as made in the two townships involved reveal such an unfair discrimination between improved and unimproved lands that the assessments upon defendant's unimproved lands should be reduced to a proportionate level with the assessments upon the improved.

The lands in question are flat, with imperfect natural drainage, containing patches of brush and grass or marsh vegetation. The soil is infested with boulders to more or less extent. It is wild land and of the same general quality as other wild land in those assessment districts. Of late years there have been no sales of such lands or of improved lands in that vicinity. It is readily seen that a literal application of the rule announced in In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968, would prevent the fixing of values for assessment purposes upon large tracts of wild lands in many localities in this state during protracted periods of depression of the real estate market. Taxes have to be levied, and to that end assessors must make valuation of real estate every two years regardless of whether any of the lands could or could not then be sold. G. S. 1923, § 1992, reads:

"All property shall be assessed at its true and full value in money. In determining such value, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which the said property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money. * * *"

It is up to the assessor to form an opinion of the market value even when there is no market or sales to aid in fixing values. The court found the full value of the different 40-acre tracts to be from $10 per acre on some and up to $13 per acre on others. True, witnesses for defendants placed the value as low as $2 per acre and as

high as $4 or $5. But the fact remains that in 1917 defendants had entered into an executory contract to sell some of this land as high as $15.80 an acre. There is also some evidence that in 1924, when this assessment was made and after the depression in real estate values, defendants have had the lands, or some of them, listed for sale at $8 per acre. The assessor, a member of the equalization board, and other long-time residents of the towns involved testified to values exceeding those found by the court.

Where there have been no actual sales for a long period of time, there is no way of determining values except by the judgment and opinion of men acquainted with the lands, their adaptability for use, and the circumstances of the surrounding community. The trial court could also take into account the qualification of the witnesses and their attitude towards the litigants. Applying the principles announced in State v. Koochiching Realty Co. 146 Minn. 87, 177 N. W. 940; In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968; In re Delinquent Taxes, Kanabec County, 164 Minn. 522, 204 N. W. 640; In re Delinquent Taxes, Ramsey County, 165 Minn. 489, 206 N. W. 657; State v. Trask, 167 Minn. 304, 209 N. W. 18; State v. Isle Harbor Land Co. 167 Minn. 519, 209 N. W. 19, we see no good reason for disturbing the trial court's finding of values.

We think defendants have failed to establish the proposition that improved lands in these assessing districts were undervalued to such an extent that they as owners of unimproved lands have not had the equal protection of the law assuring equality and uniformity in taxation. To establish a defense or right to reduction upon that ground it is not enough to show undervaluation of a number of particular classes of property, but the proof must be such as to require a finding of "an intentional violation of the essential principle of practical uniformity." Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 447, 43 S. Ct. 190, 67 L. ed. 340, 28 A. L. R. 979. And in C. G. W. Ry. Co. v. Kendall, 266 U. S. 94, 98, 45 S. Ct. 55, 69 L. ed. 183, Chief Justice Taft states that when an assessment is attacked on the ground of undervaluation of other property in the district:

"It is not enough, in these cases, that the taxing officials have merely made a mistake. It is not enough that the court, if its judgment were properly invoked, would reach a different conclusion as to the taxes imposed. There must be clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice."

There was no evidence as to the cost of clearing the improved lands. But as we understand counsel the greatest complaint of undervaluation is found in the value placed on the farm buildings. The learned trial judge has been well acquainted with this part of the state from the first settlements there. He knows the land and the usual way in which farm buildings are constructed and maintained. There is much weight to be given to what he says:

"As to the claim of undervaluation of buildings and improvements—buildings in the neighborhood in many cases are made of different kinds of homemade lumber and constructed by unskilled labor. One cannot determine the value from outside appearances or from photographs taken thereof. The evidence as to what buildings were on the lands in 1924, and as to what their conditions were is far from satisfactory, and the court is not warranted in finding that there was a discrimination in the assessments of buildings and improved lands, as claimed by the defendants. It is a matter of common knowledge that land that has been cropped for a number of years is now foul with noxious weeds, and that such land is of less value per acre than prairie, virgin soil."

We think the evidence tested by the rule stated by Chief Justice Taft, above quoted, does not call for a finding of intentional systematic undervaluation of the improved land in the districts. We do not construe the testimony of the assessor as an admission that he had intentionally and as a practice undervalued the buildings in the taxing district so as to make applicable the second paragraph of the syllabus in San Francisco Nat. Bank v. Dodge, 197 U. S. 70, 25 S. Ct. 384, 49 L. ed. 669.

The order is affirmed.

STONE J. took no part.