[1] Reported in 235 N.W. 22.
Defendant appealed from a judgment entered to enforce the payment of delinquent real estate taxes.
About September 1, 1925, defendant acquired what had been a very valuable mill at Waseca. Its operation ceased soon thereafter. It has since been idle. The machinery is now rusty, the belting is gone, and the buildings have suffered the usual deterioration incident to idleness. While the buildings were originally constructed at a great expense, perhaps in the neighborhood of $300,000, they are now unattractive. It is claimed that the milling industry has been subjected to such experiences and conditions that it is no longer feasible or practicable to operate this mill. It was once a *Page 544 
big business in a small city. The property becoming unproductive and therefore undesirable, the owner put it on the market for $50,000. It was so offered and listed for sale. The local civic association attempted for the sake of the community to dispose of it at this figure. It could not be sold.
This action involves the taxes for the year 1928 payable in 1929. The assessor determined the true and full value of the mill on May 1, 1928, to have been $169,900. Defendant claimed such value to be $50,000 only. The trial court fixed such value at $150,000.
The "true and full value in money" as used in the statute means the usual selling price, not a forced sale. The statute so states. G. S. 1923 (1 Mason, 1927) § 1992. In re Potlach Timber Co. 160 Minn. 209, 199 N.W. 968. This rule was not modified by State v. Fritch, 175 Minn. 478, 221 N.W. 725, wherein lands of doubtful quality were involved. There were no buildings in that case. But it was in fact there stated that it was up to the assessor to form an opinion of the market value even when there is no market or sales to aid in fixing such value. Such is the mandate of the legislature, from which neither the assessor nor the court may depart.
It is clear that it was the duty of the assessor in the first instance in the instant case to determine such market value of the mill. He put down the true and full value at $169,900. He gave no consideration to the selling price and testified that the property could not be sold at his figures. He took the cubic contents of the building in feet and computed the value at so many cents per cubic foot. Then he deducted the depreciation, added the value of the land, and took 40 per cent of the total for the assessed valuation. He thus reached a result which we may assume reflected the intrinsic worth of the buildings but admittedly not upon a price which in his judgment could be obtained therefor if offered for sale. The sale value, not the actual value, is what must control. In re Potlach Timber Co. 160 Minn. 209, 199 N.W. 968; State v. Fritch,175 Minn. 478, 221 N.W. 725; State ex rel. N.W. Mut. L. Ins. Co. v. Weiher, 177 Wis. 445, 188 N.W. 598, 599. Location, cost of construction, cost of reproduction, purpose for which building *Page 545 
was used, the intrinsic value or worth of the building, the price at which the owner is willing to sell, the price at which buyers who may use the property for some purpose are willing to buy, the price at which similar property, if any, has sold, and many other things are all proper elements of consideration for the purpose of determining the ultimate result, namely, the sale value.
This matter was tersely discussed by Chief Justice Vinje in the Weiher case, wherein he said [177 Wis. 449]:
"It is also urged that the building under an assessment of market value only is considered for a purpose for which it was not intended and is therefore not assessed at its full value based upon the purpose for which it was constructed. This also is true; but since the statute fixes the test, and has maintained it as it is for half a century or more, we must assume the legislature is well satisfied with it. At any rate the courts cannot change it. That it is the best test that can possibly be devised we have no doubt. As to the great mass of taxable real estate it furnishes the only fair and safe touchstone — one that extrinsic facts — actual sales of like or similar property — can conclusively establish; thus in as large a measure as possible eliminating the mere judgment of the assessor, and enabling an owner or the assessor, as the case may be, to prove the valuation by facts which he has had no part in establishing or shaping and which do not lie solely in any man's judgment. It is true that in cases such as this too low a valuation seems at first blush to be established for taxation purposes. But it must be borne in mind that the state asks a tax only upon the business value of the property of its citizens, if that term may be used, because such value is readily ascertainable for reasons already stated, and that buildings built in such a manner that they cannot be resold for their fair intrinsic worth or near their actual cost will not often be constructed. In this case we have a fine, substantial, artistic building, gracing half a block in the city of Milwaukee, built to meet the peculiar needs of its owner, and not well adapted for other uses. The state says, Tax it at its sale value. It is not ultimately a question of cost, of cost of reproduction, of revenue derived from *Page 546 
its use, of location, but of all these and of all other elements that go to determine sale value. The assessor used these elements to determine the real fair intrinsic worth of the building to one who might need it just as it is. The court used these elements in arriving at its sale value, taking into consideration the actual situation as it existed in Milwaukee at the time. The latter is the statutory rule and governs."
In the instant case the trial court adopted the erroneous theory used by the assessor, which was also followed by the local boards of equalization.
The judgment is reversed and a new trial ordered.