STATE EX REL. CITY OF SOUTH ST. PAUL AND OTHERS v. J. H. McNIVEN AND OTHERS.[1]

June 19, 1931.

No. 28,456.

*Warren Miller* and *Oscar Hallam,* for relators.

*Denegre, McDermott, Stearns, Stone & Mackey* and *Thomas Keogh,* for respondents.

LORING, J.

This is a proceeding in certiorari on the relation of the city of South St. Paul and two taxpayers to review the proceedings of the

[1] Reported in 237 N. W. 410.

Minnesota tax commission in reducing the taxable value of the property of Armour & Company at South St. Paul, where that company owns land and numerous buildings and machinery that make up its packing plant. The assessment here involved is that for the year 1930 and was made by the city assessor. He fixed the total taxable value of the Armour buildings for taxation at the sum of $2,148,951. Upon review of this assessment by the city board of review of South St. Paul, the taxable value of the land, machinery, and structures was fixed at $1,835,421. The tax commission reduced it to $1,712,300. The relators assert error in making this reduction and allege that the commission applied an illegal principle in allowing reduction of value based on overcapacity of the buildings for present business.

In determining whether the commission was justified in fixing the taxable value of the property (land, machinery, and structures) at $1,712,300 (full and true value $4,334,305) we are governed by the rules laid down in State v. Russell-Miller Mill. Co. 182 Minn. 543, 546, 235 N. W. 22, in which it was held that the "sale value" must control. There was evidence that the full and true market value of the assessed property was not over $3,000,000 on May 1, 1930. The relators claim that this figure was improperly arrived at by taking into consideration the overcapacity of the plant for the market which it supplied. The relators contend that livestock could be purchased in sufficient quantities to operate the plant at full capacity, but the testimony for the respondents was that "in the final analysis, distribution of product would regulate the operation of the plant rather than the supply of raw material." An expert witness for respondents, in arriving at an opinion as to fair sale value, stated that it would cost $250,000 a year more to operate this plant than it would to operate one of capacity suitable to the market. Obviously this would be taken into consideration in a sale of the property. The witness further said:

"The reason I figured that way was because I took the position if I had been called in by some outside packer who told me he wished to purchase the buildings and structures at South St. Paul, and

asked me what in my judgment he could afford to pay for them, taking everything into consideration, I would recommend that he not pay over $3,000,000, which would include a very careful study of the possibilities he might have for the increase in this market."

Upon the whole record we are of the opinion that the tax commission was amply justified in its finding of value.

Writ discharged.