IN RE PROCEEDINGS FOR EQUALIZATION OF ASSESS-
MENT OF REAL ESTATE, RAMSEY COUNTY.
HENRY M. KALSCHEUER AND OTHERS AS TRUSTEES OF
THE EMPORIUM OF ST. PAUL, INC. v. STATE.[1]

March 19, 1943.

No. 33,291.

[1]Reported in 8 N. W. (2d) 624.

*Bundlie, Kelley & Finley* and *Joseph A. Maun,* for appellants.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *Andrew R. Bratter,* Assistant County Attorney, for the State.

LORING, JUSTICE.

This is an appeal from an order of the district court denying

portions of petitioners' alternative motion for amended findings or a new trial. The original petitioner was The Emporium of St. Paul, Inc., which commenced these proceedings to obtain equalization of the assessment and valuation of its store and the premises on which it is located for real estate tax purposes. This property is a square city block bounded by Seventh, Eighth, Jackson, and Robert streets in the downtown business district of the city of St. Paul and the four- to five-story department store building thereon. The land is not owned by The Emporium but is held under long-term leases which require the lessee to pay the taxes. The property was assessed for 1940 at a full and true value of:

| | |
|---|---|
| Building | $   658,000 |
| Land | 1,132,900 |
| | |
| Total | $1,790,900 |

The amended petition alleged that the full and true value did not exceed:

| | |
|---|---|
| Building | $   486,525 |
| Land | 565,926 |
| | |
| Total | $1,052,451 |

The trial court made findings of fact and conclusions of law, which, as to the valuations, are:

| | |
|---|---|
| Building | $   608,000 |
| Land | 1,132,900 |
| | |
| Total | $1,740,900 |

This was a reduction from the original assessment of $50,000 as to the building only. The present petitioners are the trustees in bankruptcy of The Emporium and have been duly substituted for the original petitioner herein. The taxes for 1940 having been paid in full, the court ordered judgment for petitioners in the sum

of $1,999.60, that being the overpayment based on the reduced valuation.

■ The determination of the value of a given piece of property for taxation purposes is one of the most perplexing problems in our governmental system. Although taxation is primarily a legislative and executive function, the fixing of the value of property for taxation purposes may be properly delegated to the courts, by way of appeal, at least as a quasi-judicial matter. State v. Walso, 196 Minn. 525, 265 N. W. 345; State v. Trask, 167 Minn. 304, 209 N. W. 18. This function is committed to the district court, where the party challenging the amount of the tax has the burden of proving that the property was overvalued. In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968. The objector must establish his case by a preponderance of the evidence, and, unless the trial court's finding of value is manifestly against the weight of the evidence, we must affirm. State v. Penn Mut. L. Ins. Co. 198 Minn. 115, 269 N. W. 37.

■ Our tax statutes, Minn. St. 1941, §§ 273.11 and 273.12 (Mason St. 1927, § 1992, and Id. 1940 Supp. § 1992-1), provide the yardstick for determining true and full value as the selling price at the time of assessment. In State v. Penn Mut. L. Ins. Co. supra, we considered a similar problem and determined that the aim of the statutes is to make a distinction between market or sales value and cost price or intrinsic value. Appellants here introduced evidence as to the number of real estate transactions in Ramsey county to show an active market, although there was no evidence that there had been any offers either to buy or sell The Emporium property or any similar property in its vicinity. This situation is not uncommon, as in the business districts of our large cities the real estate is often held under long-term leases. But taxes must be assessed whether there is an active sales market or not, and property must be valued for that purpose. When no sales have occurred for a long time, the value may be determined by the judgment and opinion of men whose experience and knowledge of the lands and their surrounding circumstances qualify them

in the court's view to give reliable opinions as to fair value. State v. Fritch, 175 Minn. 478, 221 N. W. 725; State v. Penn Mut. L. Ins. Co. *supra*.

■ It is not claimed that the assessment was discriminatory. The principal assignment of error is that the findings of the trial court are not sustained by the evidence. It is appellants' theory that the property is not as valuable as it once was because of the alleged deterioration of the neighborhood where it is located, and that the resulting depreciation in value has not been taken into account by the assessor. They also contend that there has been a movement of business away from the corner of Seventh and Robert streets toward Seventh and Wabasha streets, but the evidence amply justified the trial court in rejecting this contention and in holding that the intersection of Seventh and Robert was still the busiest retail district in the city. The building which houses the American National Bank and the Bremer Arcade is diagonally across this intersection from The Emporium, and immediately across Robert street is The Golden Rule department store, a structure which the evidence tends to show was the most valuable property in the retail district of St. Paul. The evidence tended to show that the juxtaposition of the two stores was an advantage to both, as indicated by the very heavy pedestrian traffic between them, sometimes mounting to as high as 15,000 persons a day.

It is true that the wholesale and jobbing district to the northeast of Jackson street has deteriorated because of a change in methods of transacting business and that pedestrian traffic has decreased there for that reason. Whether or not this creeping paralysis of business and cessation of demands for property had materially affected the value of The Emporium property, or had come to a stop without doing so, was, on this cold record, a question for the court.

Some point is made that automobile ownership has materially increased in Ramsey county in late years and that there is a lack of parking space near the retail shopping district, somewhat

ameliorated by a parking space owned by The Emporium at Eighth and Jackson. Appellants compare the total parking space available in downtown St. Paul with that available at Montgomery Ward's store on University avenue, but apparently that situation does not result in an appreciable movement of the retail district from downtown St. Paul to University avenue or to any other similar district.

Appellants further contend that adequate consideration was not given to the fact that The Emporium building does not conform to modern architectural ideas of economical merchandising and that much space is wasted by the arcade on the lower floor along Seventh street. This contention is accompanied by a further one that the building is oversize for the housing of a department store commensurate with the demands of the market which The Emporium supplies and that much of the space must be used for storage purposes. There is probably merit to the contention about the arcade, but there is nothing in the record which indicates that this was not taken into consideration by both the assessor and the trial court in arriving at the reduced valuation placed upon the property. As to the contention of oversize, the proof did not go far enough to bring the contention within the rule which we laid down in the case of State ex rel. City of South St. Paul v. McNiven, 183 Minn. 539, 237 N. W. 410.

Appellants introduced opinion evidence which would have tended to support a lower finding as to the value of the land than that made by the court, but this testimony was met by the opinions of experts which the state introduced indicating a higher value than that found by the court. There was much philosophizing by the experts about the various trends in business, the effect of parking spaces or the lack of them, the trend toward neighborhood business centers, and the effect of modern business methods. These were all considerations before the trial court, and no doubt it weighed them carefully as well as the testimony of the experts, who differed so widely in their views. Taking the whole record,

we should be wholly unjustified in disturbing the valuation of $1,740,900 found by the trial court.

■ Appellants challenge the admissibility of their leases chiefly upon the ground that they were made some years ago. While the trial court would not have been justified in basing its valuation solely upon these leases, it was entirely justified in receiving them as an element to be considered. Income from property is one factor to be considered in arriving at its sales value. In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968; Somers v. City of Meriden, 119 Conn. 5, 174 A. 184, 95 A. L. R. 434, 442, note 4.

■ In this connection appellants contend that the value of these leases as evidence was affected by the critical financial situation of The Emporium and that evidence of its condition and that it was contemplating proceedings in bankruptcy should have been admitted. There is some apparent merit to this contention as impeaching the probative force of ·the leases, but many considerations enter into the financial results of the business conducted by appellants. Such evidence has been considered inadmissible. Somers v. City of Meriden, *supra.* Unless there was some evidence tending to prove that the property was not leasable at a figure which would return a fair income on the valuation fixed by the court, the exclusion of this evidence was not prejudicial.

■ Appellants also challenge the court's ruling in excluding a list of tax-delinquent property, some of which was as far away as Kellogg Boulevard and most of which, we take it from the street numbers, was in the deteriorated wholesale and jobbing district already discussed. While this evidence might have some force if it related to property along Seventh or Robert streets in reasonable proximity to the property under consideration, yet, in view of the fact that most of the tracts were rather remote, we think the court was justified in rejecting this evidence. Many considerations may give rise to tax delinquency, and if such delinquencies exist uniformly in a district of which the property

448

under consideration is a part, it might be error to exclude such evidence. However, we think that was not the case here.

The order appealed from is affirmed.