### ROSE SCHLEIFF v. COUNTY OF FREEBORN.[1]

June 23, 1950.

Nos. 35,030, 35,103.

---

[1]Reported in 43 N. W. (2d) 265.

*Meighen, Knudson, Sturtz & Peterson,* for appellant.
*Rudolph Hanson,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Petitioner, Rose Schleiff, hereinafter referred to as the taxpayer, filed her petition in the district court of Freeborn county under M. S. A. 278.01 claiming that certain structures on real property owned by her in the city of Albert Lea, Freeborn county, had been partially, unfairly, and unequally assessed, at a valuation greater than its real or actual value, for the 1947 taxes. Previous thereto, pursuant to an order of the district court under § 278.03, she had paid one-third of the challenged taxes.

On September 16, 1948, the district court ordered judgment for the full amount of the taxes for the year in question, less the amount previously paid thereon as provided in § 278.07. Subsequently it denied taxpayer's motion for amended findings or a new trial. Taxpayer appealed from the findings and order for judgment and from a subsequent order denying her motion for a new trial.

On appeal, the questions presented are (1) whether the proper "yardstick" for determining full and true value for assessment purposes was applied in assessing the structure on the real estate here involved; (2) whether the assessor acted properly in raising the valuation thereof approximately $30,000 for 1946 and 1947 when the valuations of similar buildings in the vicinity were left unchanged or decreased; and (3) whether the income tax return of taxpayer for the year 1945 was properly excluded from evidence.

The structure consists of a building in Albert Lea with a frontage of 62 feet on East Clark street therein and extending northward about 240 feet, originally constructed about 40 years ago, and an additional wing constructed a few years later extending west 126 feet from the northerly end of the original structure making an L-shaped building.

The floors, ceilings, posts, and other parts of the building are of wood. The walls are of brick and the basement of cement. Inside the building a line of wooden posts supports the ceiling and roof. They are 12 feet apart, making use of the interior impractical for all but a few purposes.

It was built for a specific type of manufacturing, for which it is no longer adaptable. It can be used for storage or light manufacturing, but it was essentially a one-purpose building, and that purpose no longer exists. It is in need of continuous repair, and expenses therefor are estimated to range between 70 and 75 percent of the gross income therefrom. It would cost $12,000 to put its windows and window casings in proper condition, $8,000 to repair the floor, and $19,000 for two new freight elevators.

The structure is located about two blocks east of the main retail street in Albert Lea and two blocks north of the principal east-west thoroughfare. It is not in a manufacturing section and has no trackage. To bring trackage to it would cost approximately $155,000, plus the required land for right-of-way purposes.

It was built by the American Gas Machine Company, which, after many years of operation in the manufacturing business, became insolvent. On December 1, 1939, the company filed a petition for

arrangement under the Bankruptcy Act, 11 USCA. Thereunder a reorganization was effected in 1941.

Thereafter tax delinquencies reached the sum of approximately $19,000. The corporation listed the property for sale with a real estate broker, who made repeated and continuous efforts to sell it. The best offer received prior to the sale to taxpayer here was $30,-000. It was referred to by local businessmen as a "white elephant."

On October 1, 1944, this taxpayer purchased the property for $35,000. Delinquent taxes in the sum of approximately $19,000 were deducted from the purchase price, so that the owner received only about $16,000. The transaction was between strangers dealing at arm's length. Taxpayer was interested in Lee Motors, an automobile sales agency, which then was in need of space. The new American Gas Machine Company was not in financial difficulties nor faced with the necessity of selling.

From 1941 until the sale to taxpayer, income from the structure was less than accruing taxes. Subsequently taxpayer's net income therefrom in 1947 was $5,978.98; in 1946 it was $3,152. Her federal income tax return for 1945 was offered in evidence but excluded. It would have established a net income for that year of $3,702.75 from a gross income of $17,495.48.

At the time of trial, portions of the structure were leased to Lee Motors, a Ford agency, in which taxpayer has an interest; Munsingwear Company of Minneapolis; Universal Milking Machine Company; Albert Lea Plating Company; the telephone company; and Grain Belt Beer. The principal use to which such lessees adapted their respective portions of the structure was for storage of their products. Lee Motors was required to expend approximately $24,000, of which one-half went for fixtures and equipment, to make its space practical for its purposes.

The tax history of the structure is one of constant delinquency. On April 15, 1940, the commissioner of taxation, upon the unanimous approval of the members of the city council of Albert Lea, granted an application to reduce the taxes against the property as follows: 1938 taxes from $6,456.10 to $3,476.56; 1939 taxes from

$6,470.39 to $3,836.48. In 1940, 1941, 1942, and 1943, as previously indicated, the taxes thereon became delinquent and remained unpaid until the sale. Taxes for 1944 and 1945 were paid by the present taxpayer.

In 1940 and 1941, the assessed value of the structure was reduced by the assessor from $119,850 to $83,900. In 1942 and 1943, he further reduced it to $41,950. In 1944 and 1945, taxes were paid on an assessed valuation of $37,775.

In 1946 and 1947, the assessed valuation of the structure was increased to $97,600, but subsequently reduced by the board of equalization of Freeborn county to $67,200. It is the latter assessment and valuation which taxpayer contends is arbitrary and unjust. Taxes based thereon for the years 1946, 1947, and 1948 have not been paid, except for the one-third thereof paid prior to these proceedings, as previously stated.

■ M. S. A. 273.11 provides that "All property shall be assessed at its true and full value in money." Section 272.03, subd. 9, defines "full and true value" as "the usual selling price at the place where the property * * * shall be at the time of assessment; * * * the price which could be obtained therefor at private sale and not at forced or auction sale." Section 273.12 imposes upon the assessor the duty, in determining the value of lands for purposes of taxation and in fixing the assessed value thereof, "to consider and give due weight to *every element and factor affecting the market value thereof, * * *.*"

■ It is clear from the foregoing that the duty rests upon the assessor to determine the sale or market value of the property to be assessed, and that in determining what such market or sale value is, the duty rests upon him to take into consideration *every element and factor affecting such valuation.* These factors, we have held, include "Location, cost of construction, cost of reproduction, purpose for which building was used, the intrinsic value or worth of the building, the price at which the owner is willing to sell, the price at which buyers who may use the property for some purpose are willing to buy, the price at which similar property, if

any, has sold, and many other things * * *." In re Delinquent Real Estate Taxes, Waseca County, 182 Minn. 543, 544, 235 N. W. 22.

■ In determining this question, the assessor should take into consideration evidence of the amount for which the property involved was sold, if such sale took place within a reasonable time prior to the assessment. However, such sale price, even though the sale occurred shortly prior to the assessment, is not *conclusive* as to the market or sale value of the property, although it is an *important* element to be considered by the assessor in determining such value. As stated in Village of Aurora v. Commissioner of Taxation, 217 Minn. 64, 80, 14 N. W. (2d) 292, 302:

"* * * If there are insufficient sales to establish a market price, values may be determined by the judgment and opinion of men 'acquainted with the lands, their adaptability for use, and the circumstances of the surrounding community.' "

There it was held that two isolated sales of property similar to the property here involved were insufficient to justify an assessed valuation based solely upon values established by such sales. Our decision in that case indicates clearly that it is not mandatory upon the trier of fact to accept as conclusive the price for which the property involved was sold at a particular time as the sole basis for determining its market value at such time. See, Twenty-two Charlotte, Inc. v. City of Detroit, 294 Mich. 275, 293 N. W. 647; Moran v. Grosse Pointe Township, 317 Mich. 248, 26 N. W. (2d) 763.

■ The issue for our determination, then, is whether the evidence is sufficient to sustain the trial court's finding that $67,200 was the fair market or sale value of the structure here as of May 1, 1946, the date of the challenged assessment; where taxpayer had paid $35,000 for the entire property about two years before when it was vacant; where improvements of the value of $12,000 had been added thereto after such purchase; and where portions of the property had since been leased to the extent of creating a gross rental income therefrom of approximately $1,500 per month.

Two well-established principles must form the basis of our decision. They are (1) that the assessor's valuation is prima facie

valid, the burden resting upon the taxpayer to prove that it is excessive (In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968) ; and (2) that if the assessor's valuation be upset, nevertheless the court's findings on value must be sustained unless they are manifestly contrary to other evidence submitted on this issue. State v. Penn Mut. L. Ins. Co. 198 Minn. 115, 269 N. W. 37. In other words, even though it appears that the assessor did not follow the statutory mandates in arriving at the estimates of value, the trial court's findings on the issue of value must be sustained if there is other evidence to support them. In re Taxes of Potlach Timber Co. *supra.*

■ The assessor's valuation for the structure in 1946, exclusive of the land, was increased to $97,600. This was subsequently reduced by the county board of equalization to $67,200, the figure approved by the trial court. In support of his valuation, the assessor testified that he did not base it on the sale or market value of the property as prescribed by § 272.03, subd. 9. His testimony also disclosed his failure to take into consideration the various elements and factors which affected valuation as required by § 273.11. Thus, no consideration was given by him, insofar as the record discloses, to location of the building; the purposes for which it could be used; the price at which it or similar property had been sold; or to many other factors specified in the Waseca case, *supra.* It follows that a finding based upon his testimony alone could not be sustained.

■ The remaining evidence to support the trial court's findings on the question of value is found in the testimony of three experts called by respondent. They were F. W. Wehrhan, James C. Nelson, and J. W. DeBuhr.

Mr. Wehrhan testified that in his opinion the land and structure had a market value of approximately $170,000 as of the date of assessment. Upon cross-examination, he indicated that the conception of market value upon which he based his opinion was not within the statutory definition in § 272.03, subd. 9. He defined market value as "replacement less depreciation; the income which a building brings and the future economic life of that certain building. The average of the three of them will establish your market value."

It is obvious that his testimony alone could not support the trial court's findings.

James C. Nelson, the second expert called on behalf of respondent, testified that in his opinion the value of the land and structure was $180,000 as of the date of the assessment. He testified that he would not be able to state the fair market value of the property as of October 1944; that he did not know anything about the leases on the property or take them into account; that he did not know of any previous efforts to sell it or of any offers made in connection therewith; that the bank of which he had previously been vice president would not have approved a loan of $90,000 on the property; and that his estimate of $180,000 would not constitute a valuation for loan purposes. It is obvious that his testimony would not support a finding of fair market or sale value as of the date of assessment, since no consideration was given by him to the many factors which this court enumerated in the Waseca case and which § 273.11 requires be taken into consideration in arriving at sale or market value.

J. W. DeBuhr, the third expert called on behalf of respondent, gave his opinion of the fair market value of the structure as between $117,000 and $132,000 as of the date of the assessment. He correctly defined market value as the value the property would sell for on that date in a sale from one not required to sell to one not required to buy. He testified that he had arrived at his opinion by considering location, rental income, size of the building, comparison of the market value of other properties. He testified that he knew the best offer obtained for the property in 1939 was $30,000, and that taxpayer had paid $35,000 for the property in 1944; that the latter figure might be the fair market value of the property in 1944, at a time when it was vacant, but that since the building had been substantially occupied after that date and was so occupied at the time of the assessment, its market value had been enhanced since its purchase by taxpayer; that he had taken into consideration the fact that taxpayer had been able to turn the building into new uses with increased income, and therefore he considered it worth more

in May 1946 than in October 1944; that he was aware that various tenants had short-term leases, and he took that into consideration in arriving at his estimate; and that he took into consideration the fact that the property did not have railroad facilities. He gave one formula used by many real estate men in arriving at sale value—multiplication of the gross income by 10—which, in the instant case, gave the property a market value in excess of his figure and in excess of the amount found by the trial court. He testified that he had taken into consideration the previous years when the income from the property was less than the taxes, and had also considered the future possibilities of the building.

This summary of Mr. DeBuhr's testimony indicates that it forms a sound basis for the trial court's findings that the value of the structure was $67,200. All the statutory mandates were followed by the witness in giving his estimate of value, and all reasonable elements and factors which affected such valuation were taken into consideration by him. Under such circumstances, it must follow that the trial court's finding is not unsupported by the evidence. It coincides with the figure arrived at by the board of equalization, and, in view of subsequent developments in connection with this property, does not appear to be greatly out of line with a fair valuation thereof.

As previously stated, we cannot reverse and order judgment for a valuation based solely upon taxpayer's purchase price plus cost of improvements, as contended by her. At most, we might order a new trial for the hearing of further evidence within the statutory mandates and in the light of principles enumerated in our previous opinions. It is doubtful if any different result would be arrived at after such a hearing.

■ Taxpayer contends that it was error to exclude from evidence her state and federal income tax returns for the years 1945, 1946, and 1947. They were submitted for the purpose of showing the net income derived from the property for those years, since such property was her only source of income. They would have indicated a net taxable income for 1947 of $5,978.98; for 1946, of $3,152; and for 1945, of $3,702.75.

Herman Schleiff, husband of taxpayer, testified as to such net income shown on the returns for the years 1946 and 1947, so that the only year for which net income was not disclosed was 1945. Mr. Schleiff testified that he had taken the figures included therein from the original books and records kept under his supervision and had transmitted them to the accountant. The books and records were not offered in evidence. The court sustained respondent's objection to the admission of such tax returns on the ground that the accountant who compiled them was not present so as to be subjected to examination with reference to deductions taken thereon.

It would appear that the original books and records, rather than the tax returns, were the best evidence of the facts sought to be proved. They would have been admissible under the uniform business records as evidence act, M. S. A. 600.02 to 600.04, had they been offered in conjunction with the testimony of Mr. Schleiff as to their authenticity, identity, and mode of preparation, and as to the fact that entries therein were made in the regular course of business at or near the time of the act or condition recorded, as required in § 600.02.

Taxpayer submits no authority or statutory provisions under which the tax returns might be deemed admissible in evidence. While under § 600.02 the court might justifiably have received these returns, nevertheless, in view of the fact that the original sources of information therefor were available and could have been produced by the same witness; and the further fact that the tax returns offered were submitted without evidence of their mode of preparation or other factors specified in § 600.02, we cannot see that their rejection constituted reversible error. Tiedt v. Larson, 174 Minn. 558, 219 N. W. 905; Garbisch v. American Ry. Exp. Co. 177 Minn. 494, 225 N. W. 432; Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476; Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739.

■ Finally, it is asserted that taxpayer's property was unfairly and unequally assessed in comparison with other assessments in the locality. In opposing this contention, respondent submitted

data showing valuation changes of property in the same locality as compared with those made on taxpayer's property, as follows:

| STRUCTURE | 1938 valuation | 1946 valuation | Ratio of 1946 to 1938 valuation |
|---|---|---|---|
| Rose Schleiff | 119,850 | 67,200 | 56.07% |
| Rose Schleiff, Assessor's figures before reduced by Board | | 97,400 | 81.27% |
| Western Grocer Co. | 52,150 | 48,750 | 93.48% |
| Charles Lee Hyde | 89,700 | 95,400 | 106.35% |
| Skinner Chamberlain Co. | 78,775 | 74,400 | 94.45% |
| William A. Bessessen | 63,500 | 60,500 | 95.28% |
| American Gas Machine Co. (Front St.) | 120,400 | 113,800 | 94.52% |
| Interstate Power Co. | 46,700 | 41,350 | 88.55% |

An examination of this table and other evidence in the record indicates that taxpayer failed to substantiate her claim on this issue. There is nothing in the record which would support a finding of discrimination or partiality.

We feel that in the light of the facts here present and the statutes and principles applicable, the record discloses evidence sufficient to sustain the trial court's findings on the issue of valuation, and that the order appealed from must be affirmed.

Affirmed.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.