RAU et al., Appellants v. FRITZ et al., Respondents

(134 N.W.2d 773)

(File No. 10041. Opinion filed April 28, 1965)

**Austin, Hinderaker & Hackett,** Watertown, for plaintiffs and appellants.

**Thomas G. Ries,** State's Atty., Watertown, **Frank L. Farrar,** Atty. Gen., **John Dewell,** Asst. Atty. Gen., Pierre, for defendants and respondents.

ROBERTS, P. J. Appellants are the owners of the Lincoln Hotel in Watertown, South Dakota. The assessment for 1959 fixed the value of the structure exclusive of land at $260,000 and for each of the years 1960 and 1961 as $234,000. Sixty percent of such assessed values was taken as the taxable values upon which levies were made and taxes computed. After hearing on appeal, the circuit court found that the assessment for 1959 was excessive and reduced it to $234,000 and confirmed and approved the assessments for 1960 and 1961. The property owners not having obtained all the relief to which they claimed to be entitled appealed to this court contending that the trial court was bound to accept the testimony of their expert witnesses as to the value of the structure from which an assessment for each of the years not exceeding $110,000 was determinable.

Section 2, Article XI, of the State Constitution requires not only that "taxes shall be uniform on all property of the same class", but that the "valuation of property for taxation purposes shall never exceed the actual value thereof". We stated in Williams v. Stanley Co. Board of Equalization, 69 S.D. 118, 7 N.W.2d 148, that "when excessive valuation has been shown the owner is entitled to relief though there is no proof that a reduction is necessary to effect uniformity with other property of the same class." See also In re Jepsen's Appeal, 76 S.D. 421, 80 N.W.2d 76.

SDC 1960 Supp. 57.0334 provides that "All property shall be assessed at its true and full value in money but only sixty per cent of such assessed value shall be taken and considered as the taxable value * * *. In determining the true value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which the property would sell at auction or at a forced sale." SDC 57.0301 defines "True and full value" as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDC 57.0331 provides that the assessor "shall actually view, when practicable, and determine the true and full value of each tract or lot of real property listed for taxation, and shall enter the value thereof in one column, and the value of all improvements or structures thereon in another column, opposite each description of property, also the total value of the same including improvements and structures."

The terms "actual value" and "true and full value" mean the "market value" of property to be assessed and market value has been defined as the price which a purchaser willing but not obligated to buy would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. Tidball v. Miller, 72 S.D. 243, 32 N.W. 683; Sheraton-Midcontinent Corp. v. County of Pennington, 77 S.D. 554, 95 N.W.2d 892. When there are insufficient sales to establish a market price, such value may be determined by the opinions of witnesses acquainted with the property, uses to which the property is adapted and the circumstances of the surrounding community. Village of Aurora v. Commissioner of Taxation, 217 Minn. 64, 14 N.W.2d 292; Sibley v. Town of Middlefield, 143 Conn. 100, 120 A.2d 77; Buhl Foundation v. Board of Property Assessment, 407 Pa. 567, 180 A.2d 900. The worth of property for income and sale is also its worth for purposes of taxation. Elements bearing upon market value include the condition of the property, location, income derived therefrom, cost of replacement less depreciation and every other element which can reasonably affect its value.

Depreciation includes physical depreciation, functional obsolescence and economic obsolescence. The first is wear and tear occasioned by use and the elements. Functional obsolescence is the loss of utility and failure to function because of inadequacies and deficiencies in the property. Economic obsolescence is loss of value brought about by conditions in the neighborhood of a property causing loss of business. Sheraton-Midcontinent Corp. v. County of Pennington, supra.

██ ██ The issue for our determination is whether the evidence is sufficient to sustain the finding of the trial court that $234,000 was the fair and full value of the Lincoln Hotel structure for each of the three years here in question. The valuation of the lots on which the building stands as we have stated is not in question. The circuit court does not review the record merely to ascertain whether or not the assessor and review boards acted reasonably and in the performance of their duties, but exercises an independent judicial judgment in determining whether an assessment is in excess of actual value and in violation of the constitutional limitation. If the decision of the circuit court is supported by substantial evidence, it may not be disturbed on appeal. In re Robinson, 73 S.D. 580, 46 N.W.2d 908.

The Lincoln Hotel is a five-story brick and concrete structure. The original structure was erected in 1912. A fifth story was added in 1915 and in 1921 and 1922 an addition fifty feet in width was added. Portions of the second, fourth and fifth floors in the addition have not been finished and furnished as hotel rooms. Space designed for a theater in the center of the building has been vacant since 1945. There are about 154 rooms available for occupancy and approximately one half of them are without bath. The plumbing and lighting are obsolete and inadequate and the construction of the building with high ceilings and narrow halls does not lend itself to modernization or to remodeling for other uses. There was much evidence as to economic obsolescence such as competition from new and modern motels built in suitable locations, decrease of business activities in the area of the hotel and the effect of changing traffic and parking conditions. The occupancy rate has since 1949 grad-

ually declined to 31 percent and has had an adverse effect on income.

The value of the hotel could not be determined by sales of like or similar property because there were none. Appellants called three expert witnesses as to value. They expressed opinions on the amount the property would bring in an open market from one not required to sell to one not required to buy. They valued the structure at amounts from $77,615 to $110,000. Appellant Arthur O. Rau testified that in his opinion the fair market value of the property was $150,000 and of that amount he allocated $40,000 to the lots on which the hotel structure stands.

Appellants contend that the trial court in arriving at its decision erroneously gave controlling weight to evidence of replacement costs and depreciation and did not take into consideration testimony of fair market value given by qualified expert witnesses and the earnings of the property as a factor in determining its fair value. The trial court in a memorandum opinion states that "all of the evidence as to cost of replacement, depreciation, economic and functional obsolescence, including the house count and resulting loss of income, and other relevant facts shown by the evidence," were taken into consideration in fixing the true and full value of the property. The record discloses that in 1953 the City of Watertown employed the Doane Appraisal Service of Des Moines, Iowa, to appraise for tax purposes all the real property in the city. The appraisal was made under the supervision of Donald Kearns. On March 1, 1954, Mr. Kearns was appointed city assessor and continued in that capacity until March 1, 1959. A replacement cost of $919,660 was arrived at by multiplying the cubical content of the hotel by the replacement figure of 53.3 cents per cubic foot. By using a deductible percentage of 60, to cover depreciation and functional obsolescence, the replacement cost was lowered to $367,864 referred to in the record as normal value. The last figure was then reduced to $294,290 by using 20% to cover economic obsolescence. The structure was assessed in that amount in 1954 to 1957 inclusive. The structure was assessed in 1958 at $288,405 and in 1959 at $260,000. Taking into account a 10% reduction by the state board of equalization in the assessment of the Grand Hotel in Water-

town, the city board of equalization reduced the 1960 assessment of the hotel structure by the same percentage to $234,000. That also was the amount of the 1961 assessment.

 The respondents criticize the management of the hotel. They contend that an assessor can only take into consideration in assessing property "normal and prudent management." The trial court in its findings recognized that "during the past ten (10) years, eight (8) Motels have been built which have added 184 rooms to the available rooms for travelers in the City of Watertown, and also that the house count of persons occupying space in the Lincoln Hotel in the past ten (10) years has decreased considerably, as well as the income from the operation of the Hotel." The court further found that "this reduction of patronage and income has not been due entirely to motel competition as nothing has been done by the management to meet competition or to increase occupancy, except the erection of some highway signs, and that no modernization or improvements have been made except some limited improvements in eight (8) or ten (10) rooms during the past ten (10) years." The hotel during the years here in question was operated at a loss. Respondents assert that "much of the loss is directly attributable to the mismanagement on the part of the Appellants by failing to meet or even attempt to meet the competition of motels." The income producing capacity of real property is ordinarily a factor in fixing its valuation for tax purposes. See cases collected in annotations in 95 A.L.R. 442 and 96 A.L.R.2d 666. A prospective purchaser in forming an opinion of the value of property looks to its income potential as distinguished from actual earnings. It was the express opinion of expert witnesses that the hotel structure is outmoded and functionally obsolete and that the cost of modernizing it to make it desirable and to meet motel competition would be so large as to render the expenditure inadvisable and imprudent. We think that the court gave insufficient consideration to the evidence as to the obsolete condition of the building and its low potential earning capacity. There was no evidence that structural improvements would have netted a fair return on amounts expended and been effective to meet motel competition. The ultimate question was the true and full

value of the property in its existing condition and not its value if improvements had been made. State ex rel. Northwestern Mutual Life Ins. Co. v. Weiher, 177 Wis. 445, 188 N.W. 598; State v. Russell-Miller Milling Co., 182 Minn. 543, 235 N.W. 22; In re Potlatch Timber Co., 160 Minn. 209, 199 N.W. 968.

The trial court was not duty bound, as appellants contend, to accept the testimony of their witnesses as to market or sale value. Their testimony, however expert, is opinion and for the court to evaluate. The judgment appealed from is reversed, and the cause remanded, with directions to the trial court to make from the evidence now in the record findings of fact upon all material issues (being guided therein by the holding of this opinion) and enter conclusions of law, and upon such findings and conclusions to enter judgment accordingly.

All the Judges concur.