**BUCKINGHAM WOOD PRODUCTS, INC., Appellee,**

v.

**SOUTH DAKOTA STATE BOARD OF EQUALIZATION, Appellant.**

No. 13211.

Supreme Court of South Dakota.

Argued March 18, 1981.

Decided Sept. 30, 1981.

Allen G. Wilson, Hot Springs, for appellee.

John Dewell, Asst. Atty. Gen., Pierre, for appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WOLLMAN, Chief Justice.

The South Dakota State Board of Equalization appeals from a judgment that declared void certain property assessments on land owned by appellee, Buckingham Wood Products, Inc., (Buckingham). We reverse and remand.

Buckingham is the owner and developer of a subdivision located in Fall River County, South Dakota. The subdivision is platted and contains both improved and unimproved lots.

Buckingham objected to the 1979 assessed valuation of the unimproved subdivision lots and appealed to the county board of equalization, which reduced the valuation of some of the lots by one-half. Buckingham then appealed to the State Board of Equalization, which sustained the county board's valuations.

Buckingham appealed to the circuit court, which, after a trial de novo, concluded that the Fall River County Director of Equalization had failed to comply with the provisions of SDCL 10–6–33.

Buckingham has sold none of the unimproved lots in question. The lots are subject to restrictive covenants, which, among other things, prohibit the owners of the lots from installing their own individual water supply systems. The lots are presently not

served by any central water supply system nor by any other utilities. Buckingham has not established any definite timetable for providing such services. Other than a rough trail that has been bulldozed out of the natural rolling, rocky terrain, there are no established roads serving the lots.

The trial court found that the only change that had occurred in the land between the 1978 and the 1979 tax assessment years was the platting of the land. This, the trial court found, did not make the unimproved lots usable. The trial court accordingly found that the fair market value of the lots did not exceed $600 per lot. Concluding that the mere platting of unimproved property and the setting of a price for future sales and development work does not establish a market value, the trial court held that the Fall River County Director of Equalization had failed to comply with SDCL 10–6–33, which establishes the "true and full value in money" standard of valuation. Accordingly, the trial court ordered that a new assessment be made.

■ The scope of our review of a trial court's decision in a trial de novo of a tax assessment case is to determine whether the trial court's findings are clearly erroneous. *Mortenson v. County of Stanley*, 303 N.W.2d 107 (S.D.1981); *Knodel v. Bd. of County Com'rs*, 269 N.W.2d 386 (S.D.1978); *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665 (1975); *Willow, Inc. v. Yankton County*, 89 S.D. 643, 237 N.W.2d 660 (1975).

■ Although there is a presumption that a director of equalization's value is correct, *Mortenson v. County of Stanley*, supra, we are satisfied that the evidence submitted by Buckingham overcame that presumption.

■ In the absence of any improvements in the way of roads, streets, and basic utilities, the value of the lots more closely approached the acquisition cost of the bare land than it did the selling price that Buckingham placed on the lots after the area was platted. Included in the selling price was the cost of ultimately providing the roads and utilities necessary to transform the area from its pristine state to that normally found in a developed area. We conclude, therefore, that the trial court's finding that the valuation placed on the lots by the county officials did not comport with the standards set forth in SDCL 10–6–33 is not clearly erroneous.

■ We agree, however, with the State Board's contention that the trial court erred in finding that the fair market value of the unimproved lots was not more than $600 per lot at the time of the assessment.

Two of Buckingham's witnesses gave opinions regarding the fair market value of the unimproved lots. A real estate salesman and appraiser testified that the lots were worth five to six hundred dollars an acre. Buckingham's vice president testified that the market value of the property was $555 an acre. Although these witnesses testified in terms of market value per acre, the circuit court made a finding that the fair market value was not more than $600 per lot. Buckingham has seventy-three unimproved lots for sale, consisting of approximately 106 acres. The number of acres per lot ranges from one-half acre to 6.5 acres, with the average being approximately 1.5 acres per lot. Therefore, this finding of the circuit court is without support in the record, even assuming that the circuit court accepted the testimony that the fair market value of the property was $500 per acre.

The judgment is reversed and the case remanded to the circuit court for further proceedings.

DUNN and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

A clearly erroneous finding of fact necessarily mandates a reversal herein. Confusion as to the valuation of "acres" as distinguished from "lots" befell counsel and the trial court. This resulted in a land valuation, established by the trial court, lower

than the testimony indicates. For this reason, and this reason alone, I am compelled to join in the majority's reversal and remand which should now prompt a proper valuation record below with accordant Findings of Fact and Conclusions of Law.

Aside from the mathematical miscomputation, however, I unhesitatingly agree with the theory of Buckingham's case. Further, it is apparent that the trial court's theoretical posture corresponded to the advocacy of Buckingham.

This appeal reaches us with this procedural history: the Fall River County Board of Equalization concluded that the tax assessment (by the Director of Equalization of Fall River County) on the unimproved lots in question did not exceed market value; that the unimproved lots were not valued higher than comparable lots; and finally, that the assessments on the unimproved lots were therefore valid. Our State Board of Equalization sustained these findings. Buckingham then appealed these findings to the trial court which concluded, in effect, that the State Board of Equalization erred in upholding the Fall River County Director of Equalization. Specifically, the trial court held that the only difference existing in the land in question with regard to the 1978 and 1979 assessments as compared to prior assessments existed on paper only, that is, topographical lineation reflecting that the property had been platted into lots. Platting, the trial court reasoned, did not make these lots usable and therefore it directed a reassessment. I agree. In arriving at this holding, the trial court was confronted with legal questions which it had to rule upon and the litigants thereafter fully briefed these issues in conjunction with this appeal; therefore, I desire to address these issues. The de novo decision of the trial court is the basis of the State Board's appeal.

Fall River County's Director of Equalization failed to take into consideration the restrictive covenants which limited the use of the property. This was error on his part. Restrictions imposed upon the use of land should be considered in determining the value of property for tax purposes. *Lochmoor Club v. City of Grosse Pointe Woods*, 10 Mich.App. 394, 159 N.W.2d 756 (1968).

This appeal was taken only as to the unimproved lots. Fall River County's Director of Equalization apparently made no distinction between improved lots and unimproved lots in arriving at the fair market value placed on the unimproved lots in question. When asked if he had made any distinction, the Director of Equalization testified: "No. Just a flat fee was placed on them." Under SDCL 10–6–33, this requirement is imposed: " * * * [The assessor] shall value each article or description by itself and at such a sum or price as he believes the same to be fairly worth in money." It is evident that the Director of Equalization's statutory duty was not followed.

The State Board relies heavily on (1) Buckingham's brochure extolling the virtues of Black Hills living and (2) asking prices on the unimproved lots. As these unimproved lots had no utilities or streets whatsoever, it is obvious that Buckingham would necessarily be required to outlay considerable expenditures for improvements to make the lots usable for residential purposes. The Fall River County Director of Equalization failed to consider the money which Buckingham would have to spend to grade land, build streets, and install utilities. This was error on his part.

An assessment based on expected future use of unimproved lots as residential lots is not a proper determination of fair market value. *See State ex rel. Markarian v. City of Cudahy*, 45 Wis.2d 683, 173 N.W.2d 627 (1970). The Fall River County Director of Equalization placed a value on these lots in futuro—not in praesenti—and thus did not accurately determine fair market value. A wishbook price on land is simply unrealistic and should not be used as a criteria in assessing the value of land. Intentions of a taxpayer should not be taxed until those intentions are demonstrably effected. The ultimate issue is the true and full value of the property in its existing condition and not its value if improvements had been

made. *Rau v. Fritz*, 81 S.D. 311, 134 N.W.2d 773 (1965).

In *Knodel v. Board of County Commissioners*, 269 N.W.2d 386, 390 (S.D.1978) this language is found:

> Noncompliance with mandatory statutes and excessive valuations are not sufficient findings to grant a taxpayer relief.

In *Schell v. Walker*, 305 N.W.2d 920 (S.D. 1981) (Henderson, Justice, specially concurring), I expressed my displeasure with that language. Further found in *Knodel* at 389 is this language:

> Even if the director of equalization fails to fully comply with statutory mandates, rendering the assessment void, a taxpayer cannot avail himself of such invalidity without also showing that the tax levied was unjust and inequitable.

Conceding that the language therein is the law of the state, I wish to here assert that in this case the Fall River County Board of Equalization, the Fall River County Director of Equalization, and the State Board of Equalization fell into great error in statutory and case law of this state and nation. Taxes, which they attempted to impose, were unjust and inequitable in view of the authorities I have cited and rationale herein expressed.

We live in a Republic which despairs of the heavy hand of taxation sapping our citizens' economic strength and vitality. To the courts these citizens flee, hopeful for relief from the minions of tax authorities. Thence has fled this appellee. Relief it was afforded, in theory, by the court below. Ultimate relief should not now be denied.